**Supreme Court**

No. 2010-283-C.A.

(P2/08-1764A)

State                                 :

v.                                     :

Victor M. Lopez.                  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State              :

v.              :

Victor M. Lopez.       :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  Victor M. Lopez (Lopez or defendant) appeals from a Superior Court judgment of conviction for breaking and entering and for felony assault with a dangerous weapon by choking with his hands.  On appeal, Lopez contends that the trial justice erred in denying his motion for a new trial; erred in not permitting him to question the jurors during voir dire about the reliability of eyewitness testimony; and erred in denying his motion for a judgment of acquittal on the charge of felony assault.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On the morning of April 15, 2008, Isaidely Negron unlocked the door of her apartment on Dexter Street in Central Falls which she then shared with her fiancé and her ten-month-old daughter.  Her fiancé had left for work, and she was expecting her sister to arrive soon.  She decided to watch TV while waiting for her sister but fell asleep while on her bed.

Ms. Negron was awoken at some time after that when she heard the door open and saw a "dark-skinned man" walk into the apartment. She testified at trial that, from her bed, she had a "perfect view" to the apartment door.

The intruder told Ms. Negron not to move, picked up a coat from the kitchen chair, climbed on top of her, covered her face with the coat and began to suffocate her. At trial, Ms. Negron demonstrated how the intruder was choking her by putting her right hand around her neck in a choking fashion.[1] Ms. Negron testified that she struggled and scratched the intruder's arms and that, at some point during the struggle, she felt his hands at her waist. The intruder threatened her, saying, "Don't move or I'll kill you." During the struggle, the coat came off her face, allowing her to see. She then grabbed a plastic water bottle from beside the bed and hit the intruder with it, striking him on the side of the neck. Ms. Negron stated that, at this point in the struggle, she was briefly face to face with the intruder. The intruder turned and ran out of the bedroom and Ms. Negron chased him out of the apartment and then locked the apartment door. Ms. Negron testified that, after locking the door, she saw that the time was 8:10 a.m.

Later that morning, Ms. Negron went to her sister's apartment and had her call the police. She then went to the Central Falls police station to file a witness statement. Photographs were taken of scratches on her face, chest, and arms as a result of the struggle. Ms. Negron described the intruder as being an "average-size man, dark skin, short hair" and wearing "a short-sleeved shirt and light blue jeans." The Central Falls Police did not dust for fingerprints at the apartment nor did they obtain any DNA evidence from Ms. Negron's fingernails.[2] Detective Jeff Araujo of

---

[1] We note that in testifying, Ms. Negron stated that the intruder used his "hands" in choking her but when asked to demonstrate, the record reflected that she put only her right hand around her neck.

[2] Ms. Negron testified that, during the struggle with the intruder, she had purposely scratched his arms in an effort to collect his DNA under her fingernails.

the Central Falls Police testified that Ms. Negron did not mention at that time that the intruder spoke with an accent.

A few days later, on April 20, 2008, Ms. Negron was on the porch of her apartment overlooking the driveway to the house. A car drove in and parked in the driveway and the driver passed by Ms. Negron's door wearing a "sweater" with a hood over his head. Ms. Negron identified the driver, who she later discovered lived above her in the same building, as being the intruder who had entered her apartment. She called the police immediately to inform them.

Detective Araujo put together a photo array that included a Department of Motor Vehicles license picture of defendant. Prior to being shown the photos, Ms. Negron was given an instruction form informing her that she was not obligated to identify anyone from the photo array. Nevertheless, Ms. Negron identified defendant's picture from it. Detective Araujo testified that, upon being shown the array, Ms. Negron immediately began to shake and cry and seemed "almost like she was afraid of the photographs." Detective Araujo learned that defendant worked at Chili's Bar & Grill in Lincoln, about four and a half miles away from Ms. Negron's apartment. According to Detective Araujo, the distance between Ms. Negron's apartment and Chili's could be traveled by car in approximately eleven to fifteen minutes. Detective Araujo secured an arrest warrant but he was unable to locate defendant on April 22, 2008. Lopez, however, turned himself in to the police later that night.

According to Richard Sliwinski, Jr., defendant's manager at Chili's at the time, the restaurant's computerized time records showed that defendant clocked into work at 8:30 a.m. on the morning of April 15, 2008. Sliwinski, who was called as a witness by defendant, explained that the restaurant's computer that records employees' hours does not permit employees to clock in prior to their scheduled start time, regardless of when they arrive. Sliwinski testified that it

- 3 -

was defendant's usual habit at the time to arrive at least half an hour prior to his scheduled time because he took the bus to work. Sliwinski said that defendant is bilingual but speaks English with a definite "Spanish accent." He admitted that he had no specific recollection of defendant's arrival or conduct on April 15, 2008, but stated that if he had observed any scratches on defendant's hands, he would have addressed the issue as to "whether it was reasonable for him [defendant] to work or not" because of "a possible * * * food issue."

Criminal Information No. P2/08-1764A charged Lopez with four criminal offenses: count 1, breaking and entering in violation of G.L. 1956 § 11-8-2; count 2, assault with intent to murder in violation of G.L. § 11-5-1; count 3, felony assault in violation of § 11-5-2; and count 4, assault in violation of § 11-5-3.[3] The state dismissed counts 2 and 4 prior to jury selection.

Jury impaneling took place on February 11 and 12, 2010, and the trial took place on February 12 and 15, 2010. During impanelment, defense counsel began to question the jurors regarding their opinion of eyewitness testimony through the following exchange:

> "[Defense counsel]: Because the Super Bowl was this past week, I think I'm going to start with sort of a football question. As most of you probably know, in the NFL football games there are a number of referees who are paid to watch each play, and they're trained to observe and to make a call about what they see. So if they see a touchdown, they call a touchdown. Yet, these NFL games, as I think we all know, they have what's called instant replay, so that if a coach would like a play reviewed, they ask for a video replay of what just happened.
>
> "And I'm going to direct some of my questions directly to each one of you. And I don't mean to put you on the spot, there aren't right or wrong answers here, but you, sir, [Juror No. 187] –
>
> "Juror No. 187: Yup.

---

[3] Felony assault under G.L. § 11-5-2 is defined as an "'unlawful offer to do corporal injury to another under such circumstances as may create a reasonable apprehension of immediate injury unless the person so threatened takes action or inaction to avoid it, coupled with a present ability to carry the offer into effect' by use of a dangerous weapon." State v. Froais, 653 A.2d 735, 737 (R.I. 1995) (quoting State v. Jeremiah, 546 A.2d 183, 186-87 (R.I. 1988) (abrogated on other grounds)).

"[Defense counsel]: — why do you think if you have—if the NFL has these highly trained people to see and observe, why do they have videos?

"Juror No. 187: Well, they are human. They do make mistakes. They are human. They make mistakes. They're not going to see every call. Sometime [sic] they're not in a position to see that call. Sometimes they make it—they make a judgment and they're not really sure, but they have to make that split-second decision either way.

"[Defense counsel]: So what are some of the things that interfere or cause people, even like referees, to make mistakes about what they saw?"

The state objected to this line of questioning. The trial justice heard arguments from both counsel at a sidebar conference and expressed some concerns about questioning the jurors on the subject, saying, "Well, if you ask a juror what that person expects that would be necessary for them to accept an eyewitness testimony and this witness doesn't meet that expectation, they're going to be somehow bound to say, because I answered that young attorney that way, I can't believe this witness."

The trial justice sustained the state's objection, reasoning,

"You can do that in argument. You heard this testimony of this witness, ask yourself, ladies and gentlemen, under the conditions of extreme anxiety in the early morning hours, having been woken from a sound sleep, is that identification reliable? Did she have the opportunity to see this person? You heard about the coat being thrown over her head. How long did she actually have to see this person? So I think you're really talking more about argument."

After voir dire concluded, the trial commenced. At the close of the state's evidence, defendant moved pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure for a judgment of acquittal on the charge of felony assault with a dangerous weapon. The defendant argued that the evidence did not support the felony assault charge because it was not clear that the intruder's hands were, in fact, used in such a way that was likely to produce substantial bodily harm as Ms. Negron did not testify to the length of time or the intensity of the choking.

- 5 -

The trial justice denied the motion on the grounds that Ms. Negron's testimony about how defendant straddled her and choked her was sufficient because "a choke, if carried to its natural conclusion, would probably cause death."[4]

At the close of all the evidence and after the trial justice instructed the jury,[5] the jury found Lopez guilty on the charges of breaking and entering and of felony assault with a dangerous weapon.

The defendant filed a motion for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure, which was heard on February 26, 2010. The defendant argued that he had an "imperfect" alibi for the time the crime took place because he had clocked in to work by 8:30 a.m. and he was in the habit of arriving at least half an hour before his shift was due to begin, which gave him very little time after the assault on Ms. Negron in which to get to work. He also emphasized that no one at work on April 15, 2008 noticed anything unusual about him, such as any marks or scratches on his face or hands that would be consistent with the struggle that took place with Ms. Negron. The defendant further contended that his actions in turning himself in to the police a few days later were not the actions of a guilty man. Finally, Lopez focused on the lack of physical evidence to tie him to the crime and argued that eyewitness testimony such as Ms. Negron's is unreliable.

The trial justice denied defendant's motion for a new trial, finding that Ms. Negron's testimony was "extremely credible" and noting that "no evidence * * * has been uncovered to shake the confidence of the Court in her identification." The trial justice recalled that "all of the individuals in that photo-pack look amazingly alike" and noted that Ms. Negron identified

---

[4] The defendant renewed the motion for a judgment of acquittal at the close of all the evidence. The trial justice again denied the motion.

[5] In his instructions, the trial justice permitted the jury to consider the lesser-included offense of simple assault as to count 3.

defendant "without hesitation[.]" Finally, the trial justice stated that defendant's "imperfect" alibi for the time of the crime was insufficient because it was possible that he drove from Central Falls to his workplace at the Chili's in Lincoln in the twenty minutes between the time Ms. Negron testified the intruder left her apartment and 8:30 a.m., when he clocked in to work.

At a hearing on May 7, 2010, defendant was sentenced to ten years, with eight years to serve and the balance suspended, on the charge of breaking and entering and a concurrent sentence of twenty years, twelve years to serve with the balance suspended, on the charge of assault with a dangerous weapon.

The defendant filed a notice of appeal on May 13, 2010. Judgment of conviction entered on September 14, 2010.[6]

## II

### Issues on Appeal

Lopez raises three issues on appeal. First, he argues that the trial justice erred in denying his motion for a new trial because the weight of the evidence did not support the jury verdicts. Second, he contends that the trial justice's decision not to permit defense counsel to question prospective jurors about eyewitness testimony during voir dire was in error. Lastly, Lopez maintains that the trial justice erred in denying his motion for a judgment of acquittal on the charge of assault with a dangerous weapon because the evidence was insufficient to prove that the intruder's hands were used as a dangerous weapon as required by § 11-5-2. We address each of these issues in turn.

---

[6] This Court deems a direct appeal filed prior to the entry of final judgment to be timely. See State v. Morin, 68 A.3d 61, 66 n.10 (R.I. 2013) (citing State v. DeRobbio, 62 A.3d 1113, 1118 n.7 (R.I. 2013)).

# III

## Discussion

### A

### Motion for a New Trial

It is well settled that our review of a trial justice's ruling on a motion for a new trial is deferential. State v. Covington, 69 A.3d 855, 863 (R.I. 2013). When deciding whether to grant or deny a motion for a new trial, the trial justice acts as the legendary thirteenth juror. Id. at 862. "The trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." State v. Navarro, 33 A.3d 147, 156 (R.I. 2011) (quoting State v. Pineda, 13 A.3d 623, 641 (R.I. 2011)). "The new-trial motion should be denied '[i]f the trial justice concludes that reasonable minds could differ as to the result or if the trial justice reaches the same conclusion as the jury did * * *.'" Pineda, 13 A.3d at 641 (quoting State v. Espinal, 943 A.2d 1052, 1058 (R.I. 2008)). If the trial justice has articulated adequate reasoning in support of the ruling, "his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." Covington, 69 A.3d at 863 (quoting State v. Smith, 39 A.3d 669, 673 (R.I. 2012)).

Lopez argues that the evidence was insufficient to establish beyond a reasonable doubt that he was the man who had intruded into Ms. Negron's apartment on the morning of April 15, 2008 because he had an "imperfect" alibi to the time when the incident took place and because Ms. Negron's eyewitness identification occurred under circumstances making it unreliable. We disagree. The jury was entitled to weigh the evidence regarding the inference of defendant's

alibi when deliberating and found it wanting. We cannot state that the jury's verdict was entirely unsupported by the evidence.

We find no error in the trial justice's decision denying Lopez's motion for a new trial. The trial justice set out the correct standard and then summarized complainant's testimony. The trial justice acknowledged the possibility that Ms. Negron was mistaken in her identification of Lopez as the intruder but stated that he found her testimony to be credible and the jury was entitled to find her credible as well. The trial justice also addressed the issue of defendant's "imperfect" alibi but ultimately concluded that it was insufficient because it was possible to drive from Ms. Negron's apartment in Central Falls to the restaurant in Lincoln in the time between the intruder's leaving the apartment and when defendant had clocked in to work. The trial justice finally stated that he agreed with the jury verdict.

We are satisfied that the trial justice adequately articulated his reasoning in denying the motion for a new trial. Once the trial justice had determined that he agreed with the jury verdict, he was correct in denying the motion for a new trial. Moreover, the trial justice clearly set forth and considered the factors which this Court has used in determining the credibility of eyewitness testimony in weighing Ms. Negron's testimony. Because we conclude that the trial justice did not commit clear error and neither overlooked nor misconceived material evidence, this Court will not disturb his decision to deny Lopez's motion for a new trial.

**B**

**Voir Dire Questioning**

Rule 24(a) of the Superior Court Rules of Criminal Procedure governs the questioning of potential jurors. Rule 24(a) states, in pertinent part:

> "The court may permit a defendant or the defendant's attorney and the attorney for the State to conduct the examination of prospective jurors or may itself

conduct the examination. In the latter event, the court shall permit the defendant or the defendant's attorney and the attorney for the State to supplement the examination by further inquiry or, upon request, shall itself put to the prospective jurors such additional questions as are submitted by the parties or their attorneys. The examination of prospective jurors shall be for the purpose of determining whether a prospective juror is related to a party, or has any interest in the case, or has expressed or formed an opinion or is sensible of any bias or prejudice therein."

"Although the trial justice may not hinder the attorneys' attempts to inquire into the objectivity of the prospective jurors, the scope of examination of prospective jurors during voir dire is within the sound discretion of the trial justice." State v. Kaba, 798 A.2d 383, 389 (R.I. 2002) (quoting State v. Goodreau, 560 A.2d 318, 323 (R.I. 1989)). However, "[t]he exercise of [the trial justice's] discretion does not mean that [the trial justice] must permit every question * * * that can be devised by an ingenious attorney." Id. at 390 (quoting State v. Spivey, 114 R.I. 43, 48, 328 A.2d 414, 417 (1974)).

Lopez contends that the trial justice erred in not permitting his attorney to question potential jurors regarding any preconceived notions they might have about eyewitness testimony. Specifically, defendant argues that this line of questioning was necessary in this case because Ms. Negron's eyewitness identification was the only evidence connecting defendant with the alleged crimes. During voir dire, defense counsel began to question potential jurors about their opinions of the reliability of eyewitness testimony, using the example of Super Bowl referees. After a sidebar discussion with counsel, the trial justice curtailed defense counsel's line of questioning, stating that the reliability of the complaining witness's identification could more properly be questioned during argument.

We discern no error in the trial justice's decision. It is well settled that questioning during voir dire should not be "argumentative, cumulative or tangential." State v. Johnson, 119 R.I. 749, 759, 383 A.2d 1012, 1018 (1978) (quoting Brundage v. United States, 365 F.2d 616,

- 10 -

618 (10th Cir. 1966)). Moreover, this Court has repeatedly stated that "the trustworthiness of eyewitness observations is 'not beyond the ken of the jurors.'" State v. Day, 898 A.2d 698, 707 (R.I. 2006) (quoting State v. Porraro, 121 R.I. 882, 892, 404 A.2d 465, 471 (1979)). Here, Ms. Negron's testimony and identification of defendant were subject to cross-examination. Both defense counsel in closing argument and the trial justice in the jury instructions informed the jury about factors affecting the reliability of eyewitness identifications. We cannot find that defendant was prejudiced by the trial justice's decision not to permit questioning on the reliability of eyewitness identification during voir dire.

We are satisfied from our review of the record that voir dire was thorough and the purpose of voir dire adequately fulfilled. Accordingly, the trial justice did not abuse his discretion nor will this Court disturb his decision on review.

## C

### Motion for Judgment of Acquittal

Rule 29 states that "a judgment of acquittal shall be entered when the evidence is not legally sufficient to sustain a conviction." State v. Cardin, 987 A.2d 248, 250 (R.I. 2010) (quoting State v. Ros, 973 A.2d 1148, 1159 (R.I. 2009)). We review a trial justice's denial of a motion for a judgment of acquittal using the same standard as the trial court applies. "[W]e 'must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" Id. (quoting State v. Caba, 887 A.2d 370, 372 (R.I. 2005)). "The trial justice is required to evaluate 'only that evidence that the prosecution claims is capable of supporting proof of guilt beyond a reasonable doubt.'" Cardin, 987 A.2d at 250 (quoting Caba, 887 A.2d at 372). If the

examination of that evidence reveals evidence sufficient to warrant a jury verdict of guilt beyond a reasonable doubt, the trial justice's decision should be upheld. Id.

Lopez argues that the trial justice erred in denying his motion for a judgment of acquittal on the charge of assault with a dangerous weapon because the evidence failed to establish that the intruder's hands were used as a dangerous weapon. Lopez specifically emphasizes that there was no testimony about how long the assailant had his hand or hands on the complainant's neck nor were the injuries described by the complainant indicative of choking.

We find the defendant's argument to be unpersuasive. This Court previously has held that "an individual's hands, when employed in such a manner as to be likely to produce substantial bodily harm, may properly be qualified as a dangerous weapon." State v. Zangrilli, 440 A.2d 710, 711 (R.I. 1982). This Court has never stated that any specific duration or intensity is necessary for choking with a person's hands to constitute assault with a dangerous weapon. In this case, the complainant testified and described at trial how the intruder straddled her as he had his hand around her neck in a choking fashion. We are satisfied that the complainant's testimony is sufficient to support the conviction on the charge of assault with a dangerous weapon. Regardless of the injuries actually suffered by the complainant, this Court agrees with the trial justice's statement that "a choke, if carried to its natural conclusion, would probably cause death." This Court has repeatedly held that "[t]he test is not whether serious bodily injury results from the assault, but whether the object was so used that serious bodily injury may have resulted." State v. Gore, 820 A.2d 978, 980 (R.I. 2003) (mem.). Accordingly, this Court finds no error in the trial justice's denial of the motion for a judgment of acquittal and will not disturb his decision on review.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

The record in this case is remanded to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** State v. Victor M. Lopez.

**CASE NO:** No. 2010-283-C.A.
(P2/08-1764A)

**COURT:** Supreme Court

**DATE OPINION FILED:** November 5, 2013

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Francis J. Darigan, Jr.

**ATTORNEYS ON APPEAL:**

For State: Virginia M. McGinn
Department of Attorney General

For Defendant: Lara E. Montecalvo
Office of the Public Defender