**Supreme Court**

No. 2015-304-Appeal.

(PM 11-5771)

Tracey Barros            :

v.                       :

State of Rhode Island.   :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Tracey Barros        :

v.        :

State of Rhode Island.        :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The petitioner, Tracey Barros, appeals from the May 20, 2015 judgment entered in accordance with a May 18, 2015 written decision of a justice[1] in Providence County Superior Court denying his application for postconviction relief.  He contends on appeal that "indigent funding ought to have been provided, in the post conviction proceeding, to hire the proposed expert witness to demonstrate the availability of the issue of false confession and to establish trial counsel's ineffectiveness in failing to utilize the available defense at trial."  It is further his contention on appeal that he was denied the effective assistance of counsel by both his trial counsel and his appellate counsel with respect to his original criminal case.  Lastly, he avers that the justice should have recused himself from hearing the instant application for postconviction relief.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1]     Since the same justice presided over both of Mr. Barros's criminal trials and his application for postconviction relief, we refer to him throughout simply as "the justice."

# I

## Facts and Travel [2]

On April 27, 2005, the body of Deivy Felipe was discovered on Althea Street in Providence, the decedent having suffered from multiple gunshot wounds. Later that year, in December of 2005, Mr. Barros was arrested for possession of a pistol without a license. After being interrogated by the Providence police and the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, Mr. Barros ultimately confessed to the murder of Mr. Felipe. Mr. Barros was indicted by a grand jury on the following offenses: first-degree murder, in violation of G.L. 1956 §§ 11-23-1 and 11-23-2; conspiracy to commit murder, in violation of G.L. 1956 §§ 11-1-6 and 11-23-1; discharge of a firearm while committing a crime of violence, in violation of G.L. 1956 § 11-47-3.2(b)(3); and carrying a firearm without a license, in violation of § 11-47-8(a). Prior to Mr. Barros's first trial,[3] he moved to suppress his confession, and that motion was denied after a hearing; prior to his second trial, he renewed his previously-made motion to suppress his confession, and the justice again determined that the confession could be admitted. On January 18, 2008, Mr. Barros was found guilty by a jury on all four counts charged against him. This Court affirmed his conviction in *State v. Barros*, 24 A.3d 1158 (R.I. 2011). We refer the interested reader to our opinion in that case for a more detailed recitation of the facts pertaining to Mr. Barros's criminal case.

---

[2]     Several additional facts will be supplied in the "Analysis" portion of this opinion in order to provide further context for our discussion of petitioner's various legal contentions.

[3]     A motion for a mistrial was granted in Mr. Barros's first trial after the jury was unable to reach a verdict. A second trial was then conducted.

As to the postconviction relief action now before us, the docket sheet reflects the fact that a complaint was filed on October 6, 2011.[4]  Subsequently, on January 3, 2013, Mr. Barros filed his first amended petition for postconviction relief.[5]  He then amended his petition on two more occasions, ultimately filing a third amended petition for postconviction relief on June 11, 2014. The third amended petition for postconviction relief contained three counts of ineffective assistance of trial counsel for: (1) "failure to consider and present expert testimony in the area of false confessions" at Mr. Barros's trial; (2) "failure to file a recusal motion" at Mr. Barros's trial; and (3) failure to "attempt to elicit information from certain prospective jurors regarding potential predisposition against Barros as it relates to issues surrounding his alleged confession." The third amended petition also contained one count of ineffective assistance of appellate counsel for "failure to raise the issue of undue limitation of *voir dire* * * *."

Also pertinent to this appeal is the fact that, on May 24, 2012, Mr. Barros's court-appointed attorney appeared before the justice and requested "funds to hire an expert on false confessions."  He argued that he wanted to hire an expert witness "to identify risk factors that might be involved or presented by Mr. Barros, and then to give * * * an opinion of whether this -- an expert would have been helpful in this case."  After a hearing was held with respect to that request, the justice denied the request for funds.  Thereafter, on April 2, 2014, Mr. Barros also made a motion for the justice to recuse himself based on "comments indicating bias against

---

[4]     No such document exists in the record. It appears from the record that counsel was first appointed for Mr. Barros on October 6, 2011, but there is no initial application for postconviction relief contained in the record.

[5]     The copy of the first amended petition for postconviction relief in the record is not date-stamped.  However, the docket sheet reflects the fact that it was filed on January 3, 2013.

Barros, or which created an appearance of bias that would reasonably cause members of the public or Barros to question the * * * justice's impartiality."

On April 27, 2015, a final hearing was held on Mr. Barros's application for postconviction relief. Mr. Barros's trial counsel testified at the April 27, 2015 hearing, as did two public defenders who assisted Mr. Barros's trial counsel at the second trial. On May 18, 2015, the justice issued a written decision denying Mr. Barros's application for postconviction relief and declining to recuse himself. Mr. Barros filed a timely notice of appeal.

## II

### Issues on Appeal

Mr. Barros argues on appeal that the justice, in presiding over his application for postconviction relief, erred in denying his request for funds to hire an expert on false confessions. He further alleges that trial counsel at his criminal trial was ineffective for failing to present an expert on false confessions as a witness at his trial. Mr. Barros also posits that his trial counsel was ineffective for failing to file a motion for the recusal of the justice at Mr. Barros's second criminal trial and for failing to conduct an adequate voir dire at the second criminal trial. Additionally, Mr. Barros avers that his appellate counsel was ineffective for failing to "explore" what Mr. Barros categorizes as the improper limitation on voir dire by the justice and, consequently, for failing to raise that issue on appeal.

## III

### Standard of Review

The right to seek postconviction relief is a right provided by statute—G.L. 1956 § 10-9.1-1—and is "available to a convicted defendant who contends that his original conviction or sentence violated rights afforded to him under the state or federal constitution." *Hazard v. State*,

968 A.2d 886, 891 (R.I. 2009) (internal quotation marks omitted); *see also Page v. State*, 995 A.2d 934, 942 (R.I. 2010). The applicant for postconviction relief "bears the burden of proving, by a preponderance of the evidence, that such relief is warranted in his or her case." *DeCiantis v. State*, 24 A.3d 557, 569 (R.I. 2011). When passing on a decision to grant or deny postconviction relief, "this Court will refrain from disturbing a trial justice's factual findings absent a showing that the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *Hazard*, 968 A.2d at 891; *see also Azevedo v. State*, 945 A.2d 335, 337 (R.I. 2008). However, as we have repeatedly stated, "this Court will review *de novo* any postconviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Hazard*, 968 A.2d at 891 (internal quotation marks omitted); *see also Page*, 995 A.2d at 942. That being said, "when we are called upon to conduct such a *de novo* review with respect to issues of constitutional dimension, we still accord great deference to a hearing justice's findings of historical fact and to inferences drawn from those facts." *DeCiantis*, 24 A.3d at 569 (internal quotation marks omitted); *see also Hazard*, 968 A.2d at 891.

## IV

### Analysis

As we have frequently indicated, "[t]he law in Rhode Island is well settled that this Court will pattern its evaluations of the ineffective assistance of counsel claims under the requirements of *Strickland v. Washington*, 466 U.S. 668 * * * (1984)." *Brennan v. Vose*, 764 A.2d 168, 171 (R.I. 2001); *see Page*, 995 A.2d at 942. In our review, "the benchmark issue is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result." *Young v. State*, 877 A.2d 625, 629 (R.I. 2005) (internal quotation marks omitted).

The *Strickland* standard consists of two prongs. *See Ouimette v. State*, 785 A.2d 1132, 1139 (R.I. 2001). "First, an applicant must demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment." *Page*, 995 A.2d at 942 (internal quotation marks omitted); *see also Young*, 877 A.2d at 629. In order to be considered ineffective under the first prong of *Strickland*, "trial counsel's performance must have fallen below an objective standard of reasonableness * * * considering all the circumstances." *Page*, 995 A.2d at 942 (internal quotation marks omitted); *see also Brennan*, 764 A.2d at 171. We also bear in mind the principle that "a strong (albeit rebuttable) presumption exists that counsel's performance was competent," *Page*, 995 A.2d at 942 (internal quotation marks omitted), and that "counsel's strategy and tactics fall within the range of reasonable professional assistance." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotation marks omitted). "[C]ourts should avoid second-guessing counsel's performance with the use of hindsight." *Id.*

The second prong of *Strickland* requires the applicant to "demonstrate that the deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial." *Page*, 995 A.2d at 943 (internal quotation marks omitted); *see also Young*, 877 A.2d at 629. Satisfying this second prong of *Strickland* requires a showing that "there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different." *Page*, 995 A.2d at 943 (emphasis in original) (internal quotation marks omitted). That is a "highly demanding and heavy burden." *Knight*, 447 F.3d at 15 (internal quotation marks omitted).

As we have stated, "[u]nless a defendant makes both showings, it cannot be said that the conviction or * * * sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Young*, 877 A.2d at 629 (internal quotation marks omitted). As such, "[a] defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Knight*, 447 F.3d at 15.

**A**

**Alleged Ineffective Assistance of Trial Counsel**

**1.  Expert Witness on False Confessions**

In order to address Mr. Barros's contention that his trial counsel was ineffective for failing to present an expert on false confessions at his criminal trial and also his contention that the justice erred in denying his request for funds to hire an expert witness in connection with his application for postconviction relief, we must discuss in more detail the facts of the instant case.

**a.  Request for Funds**

On May 24, 2012, a hearing was held, at which Mr. Barros's counsel requested "funds to hire an expert on false confessions" in order to advise counsel as to whether or not "an expert would have been helpful in this case." An exchange ensued between counsel for both parties and the justice with respect to what Mr. Barros's counsel contended would have been testified to by such an expert at trial and whether or not testimony of such an expert would have been admissible at the trial. Mr. Barros's counsel stated:

> "I'm not asking, or I'm not looking for an expert to come in and say Mr. Barros was telling the truth or lying when he made the confession. What I'm looking for is an expert – and I know those experts are out there – that would look and testify, look and testify about risk factors. First of all, explain to a juror that sometimes people do admit falsely to committing crimes, what are the risk factors, are the risk factors present, and then, not necessarily say in this case Mr. Barros was telling the truth or not, but give the jury

the building blocks, the information they need to make a decision on whether a confession possibly was false."

Ultimately, the justice denied the request for funds. He held that, taking into account that he had been the trial justice in Mr. Barros's criminal trial, he would not have permitted expert testimony on false confessions because "[c]redibility decisions are quintessentially issues for a jury."

### b. Final Hearing on the Application for Postconviction Relief

On April 27, 2015, at the final hearing on the instant application for postconviction relief, Mr. Barros presented multiple witnesses; we shall briefly address the pertinent portions of their testimony in turn.

Mr. Barros's trial counsel, who was counsel at both of his criminal trials, testified first. It was his testimony that he never "consider[ed] * * * utilizing an expert in false confession[s]" despite being "familiar with that area of defense * * *." On cross-examination, trial counsel stated that he was aware that the law was different from state to state on the question of whether an expert would be permitted to give such an opinion in court. However, trial counsel stated that he "never * * * considered whether or not [he] should hire an expert." When he was asked the reason for his never having considered it, he stated:

> "I wondered, as I was reviewing my file in preparation for this proceeding, why I didn't do it and I -- I -- it's really -- it's extraordinary for me, because we had a false confession seminar in our office probably in 2005 or 2006 that I went to and I learned a lot from it. And as I reviewed notes from that, from that file that I made, I noticed now that there was -- I should have thought about it. I should have called an expert witness. That was part of the false confession seminar. I didn't think about it at the time."

He further stated that he was "embarrassed" by his failure to consider using an expert on false confessions at Mr. Barros's trial due to what he characterized as his inability "to prepare in such a short period of time."

The second attorney to testify at the hearing stated that she was employed by the public defender's office and had been involved in representing Mr. Barros in connection with his second trial for the murder of Mr. Felipe; specifically, it was her testimony that she sat as "second chair" and that Mr. Barros's trial counsel was "calling [the] shots." It was her testimony that she was aware of the availability of expert witnesses on false confessions at the time of Mr. Barros's second trial, but that she had no recollection of having a conversation with trial counsel about hiring an expert in false confessions to testify. She further stated, on redirect examination, that she was "not aware of this jurisdiction allowing the defense to call such an expert as of yet."

The third attorney to testify at the April 27, 2015 hearing stated that he worked at the public defender's office and that he was involved in Mr. Barros's second trial. It was his testimony that his primary involvement was with the issue of the recording of confessions; he stated that he actually attended the trial only "maybe a day or two, perhaps more," and did not sit at the counsel table. He stated that he had no recollection of having discussed the possibility of retaining an expert on false confessions with trial counsel.

### c. The Decision of the Justice

Subsequent to the April 27, 2015 hearing, the justice issued a decision denying Mr. Barros's application for postconviction relief. In that decision, he answered the following question in the negative: "whether trial counsel's *omission* to advance such expert testimony—when its admissibility was (and still is), at best, questionable—amounted to a constitutionally deficient misstep." (Emphasis in original.) He specifically stated that, taking into account that he had been the trial justice, he would not have allowed the admission of an expert on false confessions; and he pointed out that Mr. Barros was "not hindered from explaining and challenging the reliability of his statements" and in fact had done so "through other witnesses on

direct and cross-examination, but also through his own testimony." It was further the justice's holding that "such an expert's testimony ineluctably trespasses upon the jury's quintessential function of determining the trustworthiness and reliability of the evidence." Finally, he concluded that "it [could] scarcely be said that trial counsel provided defective representation by not trying to wedge into the jury's deliberations expert advice on how to evaluate Barros' confession."

Mr. Barros challenges that conclusion on appeal. He further challenges the denial of funding for the hiring of an expert witness on false confessions. He contends that the justice should have conducted a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), before determining whether or not to permit funding. He refers specifically to what he describes as the "growing acceptance of the false confession expert testimony nationally," and he states that the denial of funds "deprived the petitioner from developing the primary issue he had initially identified" for postconviction relief. In summation, Mr. Barros argues that the justice "ought to have allowed funding and an opportunity to build the [postconviction relief] case that false confession expert testimony could and should have been put to the instant jury and the failure to do so violated Strickland and was prejudicial in that it denied the jury insight into the phenomena which could have better informed their judgment especially give [*sic*] the paucity of other evidence of guilt."

### d. Discussion

In assessing Mr. Barros's contentions on appeal with respect to expert testimony on false confessions, we initially deem it important to lay out with absolute clarity what is and what is not before the Court in the instant case: the truth or falsity of Mr. Barros's confession, the voluntariness of his confession, and the justice's denial of his motion to suppress the confession

are *not* before this Court. Those issues could have been, and indeed some of them were, raised by Mr. Barros in his direct appeal. We have already ruled on the issues raised in Mr. Barros's direct appeal in *Barros*, 24 A.3d at 1158, and any issues that were not raised therein but could have been raised are barred from consideration by the doctrine of *res judicata*. *See* § 10-9.1-8 ("Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."); *Glassie v. Doucette*, 159 A.3d 88, 95 (R.I. 2017) ("Res judicata makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein.") (internal quotation marks omitted); *see generally Bossian v. Anderson*, 991 A.2d 1025, 1027 (R.I. 2010).

Accordingly, the only two questions properly before this Court in the instant action as it relates to expert testimony on false confessions are: (1) whether or not Mr. Barros's trial counsel was ineffective for failing to utilize an expert witness on false confessions; and (2) whether or not the justice erred in refusing funds to hire such an expert in this postconviction relief action. In order to answer those questions, we need not pass upon whether or not the testimony of an expert witness on false confessions would have been admissible in Mr. Barros's criminal trial. In our opinion, it is clear from the record in this case and from the silence of our jurisprudence concerning this issue that failure to call such an expert witness on false confessions in Mr. Barros's criminal trial was not an error which rendered trial counsel ineffective.

- 11 -

We reach that conclusion because it is clear that, at the time of trial, courts around the country were divided on the admissibility of such evidence and remain divided on its admissibility. *See* David A. Perez, *The (In)Admissibility of False Confession Expert Testimony*, 26 Touro L. Rev. 23, 24-25 (2010) (stating that "state and federal courts remain bitterly divided on the question of admissibility of false confession expert testimony" and citing cases on each side of the divide); *see also Admissibility of Expert Testimony Regarding False Confessions*, 11 A.L.R. 7th, Art. 6, §§ 13-27 (2016) (citing numerous cases from various jurisdictions allowing the admission of expert false confession testimony and numerous cases from other jurisdictions excluding such testimony). Mr. Barros's postconviction relief counsel himself conceded, in his August 27, 2014 "Memorandum in Support of Petitioner's Motion for Recusal and Third Amended Petit[io]n for Post-Conviction Relief," that "the value and relevancy of false confession experts is an area untested in Rhode Island jurisprudence," and he further conceded that "[c]ourts around the country are divided on the value of such evidence."[6] Even on appeal, Mr. Barros's counsel refers to the "growing acceptance of the false confession expert testimony nationally." It is also important to bear in mind that this Court has never ruled on the admissibility *vel non* of such expert testimony.

In view of these circumstances, it would strain rationality to rule that an attorney was constitutionally ineffective for not introducing expert testimony on false confessions. Certainly under an objective standard of reasonableness, trial counsel need not have produced expert testimony that this state has never held to be admissible—and when courts around the country are divided as to its admissibility. *See Page*, 995 A.2d at 942. As such, Mr. Barros has not met

---

[6] We do note that postconviction relief counsel also alleged in the memorandum that the "trend in this area appears to be heading toward admission of expert false confession testimony * * *."

his burden of rebutting the "strong * * * presumption * * * that counsel's performance was competent" by alleging that counsel should have introduced expert testimony whose admissibility was questionable at best. *Id.* at 943.

We would emphasize that, in evaluating an attorney's performance under *Strickland*, our approach is to look at the legal landscape and what was known to the attorney *at the time at issue*. *Lynch v. State*, 13 A.3d 603, 606 (R.I. 2011) (noting that "[t]he United States Supreme Court stated in *Strickland*, 466 U.S. at 689, * * * that [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time") (internal quotation marks omitted). However, in this case, even applying the hindsight available to us in view of the seven years that elapsed between Mr. Barros's trial and the Superior Court's decision on his application for postconviction relief, we would still be of the decided opinion that Mr. Barros's trial counsel was not ineffective. It necessarily follows that, if it would not have been ineffective to fail to introduce expert testimony on false confessions due to the unsettled state of the law at the time this application for postconviction relief was denied in Superior Court, then it certainly could not have been ineffective assistance of counsel to have failed to do so at the time of Mr. Barros's trial. Accordingly, we are in agreement with the justice's determination that Mr. Barros's trial counsel was not ineffective and that, therefore, his application for postconviction relief must be denied.

Additionally, for the just-discussed reasons, we are unable to perceive any error in the justice's refusal to approve funding for the hiring of an expert witness on false confessions in this postconviction relief action. Such an expert simply was not necessary to determine this claim of ineffective assistance of counsel, and we commend the justice for his conserving of meager state

resources in a situation where the requested expenditure would have been unnecessary.[7]  And we remain unpersuaded by Mr. Barros's contention that a hearing pursuant to *Daubert*, 509 U.S. at 579, was necessary in this case.

## 2.  Recusal of the Justice

On appeal, Mr. Barros contends that his trial counsel was ineffective for failing to file a motion to recuse the justice during the trial based on remarks which the justice made in the course of ruling on Mr. Barros's motion to suppress his confession prior to his first trial.  He further avers that the justice erred in failing to recuse himself with respect to the postconviction relief application.  Mr. Barros bases his argument for recusal of the justice presiding over the application for postconviction relief on the same statements the justice made in ruling on the motion to suppress and statements made in ruling on the motion for a new trial following Mr. Barros's second trial, which statements Mr. Barros contends illustrate a continuing bias.

In order to properly consider Mr. Barros's contentions we must look, initially, at the comments by the justice with which Mr. Barros takes issue.  Mr. Barros points to the following exchange during the ruling on the motion to suppress prior to Mr. Barros's first trial:

> "THE COURT: * * * We come then to the issue as to whether or not the defendant thereafter voluntarily, without police coercion, compulsion or overreaching, offered to speak to the officers freely and voluntarily. As [trial counsel] indicated yesterday, we have a clearly demarcated line.
> "The officers all testified that at no time did this man speak of a lawyer. The defendant testified that he did. But credibility decisions have to be made. The defendant offered testimony that I find not credible at all.
> "[TRIAL COUNSEL]: Judge, I hate to interrupt. Am I going to be allowed to argue?

---

[7]   We do not mean to suggest that there may not be another case, arising in a different factual and procedural posture, where providing the funding for such an expert might be appropriate.

- 14 -

> "THE COURT: I don't think I need any argument. You can offer comment when I'm done, if I've missed anything. If I've missed a hole that needs to be plugged, you can bring it up.
> "I'm satisfied from what I've heard that the defendant lied to me in certain respects, and those lies and mendacious statements cast a very dim light on his credibility."

Mr. Barros further points to comments the justice made in the course of ruling on the motion to suppress to the effect that Mr. Barros was "Houdini" and a "lip-reader." The justice stated that he found a portion of Mr. Barros's testimony "incomprehensible;" he found another portion of the testimony to be "flat out prevarication." The justice further stated that Mr. Barros's testimony at the motion to suppress hearing with respect to the recording of his confession was "an outrageous and blatant lie."

Finally, Mr. Barros directs this Court's attention to the following statement made by the justice in ruling on Mr. Barros's motion for a new trial subsequent to his second trial: "I have referenced a number of comments that your client made that are absolutely simply disbelief."

The justice held, in his written opinion denying Mr. Barros's application for postconviction relief, that Mr. Barros had waived his right to seek recusal as to the application for postconviction relief because it was not until nearly two years after the first amended petition for postconviction relief was filed in the case that a recusal motion was made. He further held that, in ruling on Mr. Barros's motion to suppress, he was "obligated to make definitive factual and credibility findings" in the "restricted confines of a suppression motion hearing * * *." It was his ultimate holding that "[m]aking such determinations on the basis of facts at a pretrial proceeding does not * * * constitute a valid basis for recusal." He went on to state:

> "All that occurred in this case was that the Court presided at a suppression hearing, which Barros demanded be convened, and offered a ruling on his motion—a ruling which was restricted to the evidence at *that* hearing. The Court did precisely what it was expected, nay, mandated to do: Determine who was credible and

who was not; decide who told the truth and who didn't. The Court made those determinations. Recusal does not thereafter lie when a court fulfills its judicial obligation." (Emphasis in original.)

Finally, the justice held that it was not ineffective assistance of counsel to have failed to move for recusal during trial because "there were no grounds for trial counsel to have urged this Court's recusal;" and he added that Mr. Barros could "demonstrate no prejudice if the case had proceeded to trial before a different judge."

In assessing Mr. Barros's contentions, we look to our jurisprudence with respect to recusal. We have stated that "[a] judicial officer must recuse only if he is unable to render a fair or an impartial decision;" and we have also indicated that "justices have an equally great obligation **not** to disqualify themselves when there is no sound reason to do so." *State v. McWilliams*, 47 A.3d 251, 260 (R.I. 2012) (emphasis in original) (internal quotation marks omitted); *see also Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 185 (R.I. 2008), *cert. denied*, 555 U.S. 955 (2008). The party who seeks to have a justice recuse himself or herself "bears the burden of establishing that the judicial officer possesses a personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his [or her] impartiality seriously and to sway his [or her] judgment." *McWilliams*, 47 A.3d at 260 (internal quotation marks omitted); *see also Mattatall v. State*, 947 A.2d 896, 902 (R.I. 2008). In meeting his or her burden, a "defendant's subjective feelings and unsupported accusations are not sufficient grounds for recusal." *State v. Sampson*, 884 A.2d 399, 405 (R.I. 2005); *see also State v. Clark*, 423 A.2d 1151, 1158 (R.I. 1980).

Additionally, we have stated that "it is essential for us to review the justice's comments * * * in the context in which they were spoken." *McWilliams*, 47 A.3d at 260; *see*, *e.g.*, *State v. Howard*, 23 A.3d 1133, 1137 (R.I. 2011) (The trial justice's views, "even though

- 16 -

harshly and caustically expressed, would likely not have warranted the hearing justice's recusal had he expressed them *after* he had fairly conducted the violation hearing and then adjudged defendant to be a violator of his probation or had he expressed them in the context of determining how much of defendant's suspended sentence to remove.") (emphasis in original). In making the statements that Mr. Barros points to on appeal, the justice was either: (1) announcing the credibility determinations which he was required to make before arriving at a decision on Mr. Barros's motion to suppress his confession; or (2) was in the process of ruling on Mr. Barros's motion for a new trial. As such, the statements made in the instant case, in the context in which they were made, certainly did not require recusal. In our view, there was no error in the justice's ruling with respect to recusal. And we are unable to improve upon that justice's pithy statement of principle: "Recusal does not * * * lie when a court fulfills its judicial obligation." *See McWilliams*, 47 A.3d at 261-62 ("[T]hose comments [made by the justice] were * * * made in strict compliance with the justice's duties in conducting the hearing. We have no hesitation in deciding that no reasonable observer would conclude that the trial justice was unable to render fair treatment in the later trial of this case."); *Mattatall*, 947 A.2d at 903 ("We are in complete agreement with the hearing justice's statement that '[r]ecusal does not thereafter lie simply because the court has carried out its judicial responsibility of explaining the reasons for that sentence.' Rather than making biased or prejudicial statements about applicant,[ ] * * * the hearing justice, in accordance with what this Court has encouraged judicial officers to do, was simply articulating his reasons for enhancing applicant's sentence in accordance with the habitual offender statute."). Indeed, it would be virtually antinomian for us to declare that, every time a trial justice ruled against a defendant with respect to a pretrial

motion or a motion for a new trial, said justice was required to recuse from any further proceedings involving that defendant. We have ample jurisprudence to the contrary.

In light of the foregoing considerations, we are unable to countenance Mr. Barros's contention that his seasoned trial counsel was ineffective for failing to move for recusal after the justice's ruling on Mr. Barros's motion to suppress. Not having done so most certainly did not fall below an objective standard of reasonableness, nor is there a reasonable probability that the making of such a motion would have led to a different result. *See Page*, 995 A.2d at 942. Furthermore, for all of the above-discussed reasons, the justice certainly need not have recused himself from presiding over the application for postconviction relief.

### 3. Voir Dire

The petitioner alleged in his third amended petition for postconviction relief that his trial counsel was ineffective because he "failed to attempt to elicit information from certain prospective jurors regarding potential predisposition against Barros as it relates to issues surrounding his alleged confession." On appeal, Mr. Barros presses that argument, averring that, "[a]lthough courts are reluctant to second-guess the decisions or performance of trial counsel, the woefully inadequate voir dire of the jury pool on the most critical issue at Barros' trial was grossly ineffective." He also contends that, after the interview of the initial group of prospective jurors, "out of the nine subsequently called prospective jurors, trial counsel only asked one person a question on the subject [of false confessions]."

We turn, therefore, to a review of the voir dire at Mr. Barros's second criminal trial—specifically, to the portions of the voir dire pointed to by Mr. Barros. During the course of the voir dire, the following exchange occurred:

> "[TRIAL COUNSEL]: * * * There is nothing linking [Mr. Barros] to the crime. The only evidence against Mr. Barros is the

fact that he made a statement admitting to it. Now, [Juror], what do you think about that?

"A JUROR: Why would he make the statement if he didn't do it?

"[TRIAL COUNSEL]: That's a question that I have. The question that many of you I'm sure have.

"Now, you're going to hear from [the trial justice] that you have a duty to judge whether or not Tracey Barros has personally and voluntarily given up his right to remain silent and make a statement in this case, or whether or not it was coerced from him, whether or not pressure was put on him in order to have him make a statement. Now, [Juror], do you agree with me, sir, that a person charged with a criminal offense could have pressure put on him in order to force him to make a statement against his own interest?

"A JUROR: Some people maybe; but I wouldn't admit to anything I didn't do.

"[TRIAL COUNSEL]: Okay. Anyone else feel like that? Okay."[8]

Trial counsel then proceeded to relate some of the facts of the interrogation of Mr. Barros by the police in the instant case. When the just-referenced juror remained "steadfast in [his] belief," trial counsel went into more detail with respect to the interrogation. As trial counsel was pointing to the fact that only the confession was taped and that "[we] don't actually know what went on during" the interrogation, the prosecutor objected. The Court ruled as follows:

> "I'm going to sustain the objection. I'm not going to have the case played out in a thumbnail fashion of factual renditions during voir dire. Set forth in Rule 24, very specific and particular issues are the subject of inquiry. This is not one of them."

After trial counsel resumed and another objection was quickly made and sustained, trial counsel asked the prospective jurors the following: "Can you all promise Tracey Barros that you will be able to look at everything that happened prior to him making this statement and how it came to be that he was interrogated for this charge? Can you all promise me that?"

---

[8]    The juror with whom trial counsel engaged in the above-quoted discussion was ultimately stricken from the jury panel by the prosecution.

Trial counsel then asked a prospective juror later in the voir dire: "Do you believe that there could be pressure brought to bear on someone who makes a confession?"  The justice then immediately stated: "I told you we're not going to do that. That's factual in nature. You're not going to be heard in a vacuum."  We note additionally that trial counsel was later permitted to make the following inquiry of a juror:

> "[Y]ou heard the prosecutor ask you about whether or not a confession would be enough, if you believed it, to have you return a verdict of guilty. Would you promise the defendant that you would look into the circumstances surrounding as well as the contents of what the confession says as to whether or not you give it any reliability? Could you do that?"

After reviewing the voir dire transcript, in presiding over the application for postconviction relief, the justice held that Mr. Barros's criticisms of his trial counsel with respect to the voir dire were "wholly misplaced."  The justice specifically stated: "It was the Court, not Barros' trial attorney, who refined the voir dire. No error can be assigned to trial counsel under such circumstances."  He further ruled as follows:

> "To the extent that this Court placed some restrictions on trial counsel's inquiry, those limitations were entirely consistent with [precedent] and the purpose of Rule 24(a) [of the Superior Court Rules of Criminal Procedure]. In any event, trial counsel was allowed to make a completely fair and reasonable inquiry of the jurors regarding Barros' custodial statements, and he made entirely clear to the panel that their assessment of the circumstances surrounding those statements would be the centerpiece of his case. Further, Barros was not in any way limited from that goal during a thorough cross-examination of the State's witnesses, his own testimony, and during counsel's closing argument."

Rule 24(a) of the Superior Court Rules of Criminal Procedure governs the examination of prospective jurors and provides in pertinent part that "[t]he examination of prospective jurors shall be for the purpose of determining whether a prospective juror is related to a party, or has any interest in the case, or has expressed or formed an opinion or is sensible of any bias or

prejudice therein." We have stated that, "[a]lthough the trial justice may not hinder the attorneys' attempts to inquire into the objectivity of the prospective jurors, the scope of examination of prospective jurors during voir dire is within the sound discretion of the trial justice." *State v. Lopez*, 78 A.3d 773, 780 (R.I. 2013) (internal quotation marks omitted); *see also State v. Kaba*, 798 A.2d 383, 389 (R.I. 2002). We have similarly made it clear that "[t]he exercise of [the trial justice's] discretion does not mean that [the trial justice] must permit every question * * * that can be devised by an ingenious attorney." *Lopez*, 78 A.3d at 780; *see also Kaba*, 798 A.2d at 390. Questioning during voir dire should certainly not be "argumentative, cumulative or tangential." *State v. Johnson*, 119 R.I. 749, 759, 383 A.2d 1012, 1018 (1978) (internal quotation marks omitted); *see also Lopez*, 78 A.3d at 780. It is also a basic principle that it is not the proper role of counsel to "try the case on *voir dire*, * * * attempt to elicit a commitment from the jurors about how they would react to hypothetical facts, [or] * * * seek to predispose any of the jurors to react a certain way to anticipated evidence." *State v. Holmquest*, 243 S.W.3d 444, 451 (Mo. Ct. App. 2007); *see also People v. Polk*, 942 N.E.2d 44, 66 (Ill. App. Ct. 2010) ("The purpose of *voir dire* is to select an impartial jury, not to indoctrinate a jury or choose a jury with a predisposition.").

It is incumbent upon us to determine whether or not Mr. Barros's trial counsel was ineffective in his conducting of the voir dire at Mr. Barros's second trial. After a careful review of the transcript of the voir dire, we can perceive nothing that would indicate that trial counsel was constitutionally deficient in the manner in which he conducted voir dire. It is true that the justice did limit some of trial counsel's attempted questions to prospective jurors. However, in our view, those limitations were within the justice's discretion. *See Lopez*, 78 A.3d at 780; *Kaba*, 798 A.2d at 389. Trial counsel's questions were not limited solely to assessing the

- 21 -

objectivity of the prospective jurors and "[a] * * * court properly refuses questions designed to educate the jurors on the defendant's theory of defense and ensure the selected jurors are receptive to that defense." *Polk*, 942 N.E.2d at 66. We simply cannot say that failure to further contest the justice's limiting of his questioning fell below an objective standard of reasonableness. *See Page*, 995 A.2d at 942. Nor could Mr. Barros possibly show that, but for trial counsel's not further contesting the limitation imposed on his questioning of prospective jurors, the jury would have reached a different verdict. *Id.* at 943.

Moreover, we note that trial counsel was able to ask: "Can you all promise Tracey Barros that you will be able to look at everything that happened prior to him making this statement and how it came to be that he was interrogated for this charge? Can you all promise me that?" He also made it clear that the voluntariness of Mr. Barros's confession would be at issue: "Now, you're going to hear from [the trial justice] that you have a duty to judge whether or not Tracey Barros has personally and voluntarily given up his right to remain silent and make a statement in this case, or whether or not it was coerced from him, whether or not pressure was put on him in order to have him make a statement." We acknowledge that trial counsel did not specifically ask each replacement juror a question with respect to false confessions. However, his questioning had been permissibly limited by the justice, and he frequently inquired of the replacement jurors if they had heard and understood his previous questions to the prospective jurors and whether or not they had any responses.

Accordingly, we can perceive no error in the justice's denial of Mr. Barros's application for postconviction relief on the issue of whether or not his trial counsel was ineffective in conducting the voir dire at the second criminal trial.

## B

### Alleged Ineffective Assistance of Appellate Counsel

Mr. Barros contends that his appellate counsel, who represented him on his direct appeal after his second criminal trial, was ineffective because she failed to "explore th[e] improper limit[ing]" by the justice of trial counsel's questioning during voir dire. He points to the fact that she never ordered the transcript of the voir dire in the course of her review of the case.

At the April 27, 2015 final hearing on his application for postconviction relief, Mr. Barros's counsel represented that he had "made the offer of proof" to the effect that he had discussed the case with Mr. Barros's appellate counsel and that she represented to him that she met with trial counsel and "he never indicated to her that there were any issues in the voir dire that he believed merited explorations and that's part of the reason she didn't explore it."

We have stated that the *Strickland* standard for reviewing claims of ineffective assistance of counsel applies to appellate counsel as well as trial counsel. *Page*, 995 A.2d at 943. Moreover, "for appellate counsel's performance to pass muster under the *Strickland* test, appellate counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (internal quotation marks omitted); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000). Thus, to show that appellate counsel has been ineffective, "an applicant must demonstrate that the omitted issue was not only meritorious, but clearly stronger than those issues that actually were raised on appeal." *Page*, 995 A.2d at 944 (internal quotation marks omitted).

In our opinion in *Barros*, 24 A.3d at 1163-81, this Court wrestled at length with the question of whether the police were required to record Mr. Barros's entire interrogation (rather than recording just his confession itself) and with the issue of the voluntariness of that

confession. It is our considered judgment that the issue of the limits placed on trial counsel's questions during voir dire certainly was not clearly stronger than the issues raised on appeal by appellate counsel.[9] Moreover, as discussed above, there was no error in the justice's limiting of trial counsel's voir dire questioning. Accordingly, it is our opinion that the justice did not err in denying Mr. Barros's application for postconviction relief based on ineffective assistance of appellate counsel.

As such, it is our conclusion that there was no error on the part of the justice in denying Mr. Barros's application for postconviction relief, in denying his request for funds, or in refusing to recuse himself from presiding over the application for postconviction relief.

## V

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. We remand the record to that tribunal.

---

[9] We note with approval the following quote presented to this Court by the state: "A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,' * * * in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983).

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Tracey Barros v. State of Rhode Island. |
| **Case Number** | No. 2015-304-Appeal.<br>(PM 11-5771) |
| **Date Opinion Filed** | April 4, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>George J. West, Esq.<br>For State of Rhode Island:<br><br>Lauren S. Zurier<br>Department of Attorney General |