State                               :

    v.                              :

Kevin Storey.                       :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                              :

Kevin Storey.                       :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Kevin Storey, appeals from a Superior Court judgment of conviction for one count of assault with a dangerous weapon and one count of simple assault and battery.  After a jury trial, the defendant was sentenced to a term of fifteen years at the Adult Correctional Institutions, with five years to serve and ten years suspended, with probation.  On appeal, the defendant argues that the trial justice erred by: (1) denying his motions for judgment of acquittal and new trial; (2) not allowing him to cross-examine the complaining witness concerning custody issues involving her sons; and (3) imposing an illegal sentence.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.[1]  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] The parties agreed to waive oral argument.

# I

## Facts and Travel

Danielle Saleeba testified at trial that on the night of October 27, 2009, she awoke to defendant (then her husband) shaking her shoulders and demanding to know why she had not told him that David Liese, the general manager at the restaurant where she worked, had been working with her the previous night. According to Saleeba, defendant struck her on the head with an open palm and began choking her with both hands pushing down on her throat. Saleeba recalled that she could not breathe and thought that she was going to die. She managed to get out of defendant's chokehold, but he then stuck his fingers down her throat, only pulling them out when she bit him. Saleeba further testified that, as she tried to get off the bed, defendant struck her left temple with either his fist or his elbow.

Ms. Saleeba said she was bleeding profusely from the side of her head. She testified that when her eldest son saw her emerge from the bedroom on her way to the bathroom, he told her that she had "blood squirting out the side of [her] head."[2] Saleeba recalled hearing defendant tell her son that his mother had "hit her head on the computer desk." The computer desk was located next to the bed but on the other side from where she always slept. At trial, Saleeba stated that she "went along with it [because she] didn't want anything bad to happen to [her] son * * *." When Saleeba looked in the mirror in the bathroom, she saw a "big gaping hole" on her temple that "looked like a fountain coming out the side of [her] head." Saleeba told defendant she needed an ambulance to get to the hospital, but he insisted on driving her to the hospital himself. Before leaving, Saleeba testified, she called her mother (who lived ten minutes away), told her

---

[2] Saleeba has three sons, but defendant is the biological father of only her youngest son.

that she had cut her head, and asked her to come over to sit with the children while she went to the hospital.

Ms. Saleeba's mother, Cynthia Saleeba (Cynthia),[3] testified that when she arrived at her daughter's house, she saw a lot of blood around the house. She observed blood on a pillow and towel on the kitchen floor, smears and trails of blood between rooms as well as in the bedroom on the pillow, sheet, and blanket on the side of the bed farthest away from the computer table. She did not recall seeing any blood on the computer table in the bedroom or between the computer table and the bed.

Ms. Saleeba testified that she had been married to defendant for four years at the time of the incident, but that they had not been getting along for a couple of years. Saleeba recalled that, over the course of the previous month, defendant had been accusing her of having an affair with David Liese. At trial, Liese testified that he saw defendant at the restaurant the evening before the incident occurred, and that defendant made comments insinuating that there was more than an employer and employee relationship between Liese and Saleeba. Liese testified that the comments made him feel uncomfortable because they were not true, but that defendant did not threaten him.

According to Saleeba, during the ten-minute drive to Rhode Island Hospital, defendant told her that he had to beat her up because he could not "beat up [Liese]," and he repeatedly told her that "[t]he next time I'm going to kill you." At the hospital, Saleeba received approximately twenty-four stitches along her left temple. She admitted at trial that she did not tell any of the staff at Rhode Island Hospital the truth about how she had sustained her injuries because she

---

[3] To avoid confusion, we shall refer to Cynthia Saleeba as Cynthia. No disrespect is intended.

feared for her life and because defendant was with her most of the time that she was at the hospital.

Several days later, however, Saleeba told her mother what had happened. On Halloween, after trick-or-treating with all three of her sons, she returned home with them and the father of her eldest son. Saleeba testified that, sometime after defendant arrived, he announced his intention to "take care of [Liese] once and for all" and then left. Saleeba recalled that, when defendant returned, he was angry because Liese had not been at the restaurant, which was where defendant had expected to find him. The defendant announced that Saleeba was never to return to her employment at the restaurant. Saleeba testified that she called her mother because her children were upset and afraid, and wanted to leave. Cynthia testified that she received a telephone call that evening around 10 p.m. from her daughter, asking her to come to her daughter's house. When Cynthia arrived at the house, she found her two eldest grandsons in tears. Saleeba testified that she then told her mother the truth about what had happened four days earlier. Saleeba and her children went to her mother's house to spend the night. The next morning, Saleeba and her mother went to the East Providence police station, where they both completed written statements and photographs of Saleeba were taken.

The defendant was tried by a jury in March 2012 in Providence County Superior Court on two counts of violating G.L. 1956 § 11-5-2: one count of assault with a dangerous weapon and one count of felony assault resulting in serious bodily injury. At the close of the state's evidence, the trial justice denied defendant's motion for judgment of acquittal. The jury returned a verdict on March 30, 2012, convicting defendant of assault with a dangerous weapon (count 1), acquitting him of assault and battery resulting in serious bodily injury (count 2), but convicting him instead on count 2's lesser-included offense of simple assault and battery. On April 5, 2012,

the trial justice denied defendant's motion for a new trial.  On July 12, 2012, the trial justice

sentenced defendant to fifteen years on count 1, with five years to serve and ten years suspended,

with probation.  On count 2, the trial justice sentenced defendant to one year, suspended, with

probation, to be served concurrently with count 1.  The trial justice also entered a no contact

order with respect to Saleeba and ordered domestic abuse counseling.

## II

## Issues on Appeal

The defendant argues that the trial justice erred in denying both his motion for judgment

of acquittal and his motion for a new trial.  The defendant also contends that the trial justice

erred during the trial when she did not allow cross-examination of Saleeba on the subject of prior

custody issues regarding her sons and that the fifteen-year sentence for his conviction for assault

with a dangerous weapon is illegal.  We will address each issue in turn, providing additional

facts as necessary.

## A

## Motions for Judgment of Acquittal and New Trial

At the close of the state's evidence, defendant moved for a judgment of acquittal under

Rule 29 of the Superior Court Rules of Criminal Procedure.   The entirety of his argument was:

> "In this case, Judge, I'd submit, given the physical discrepancies in
> the evidence, the fact that although the complainant said she was
> choked to the point of not being able to breathe, the physicians on
> that night noted nothing in her throat.  Given that, I ask the Court
> to grant this motion."

The trial justice, noting that she must view the evidence in the light most favorable to the state

without assessing credibility or weighing the evidence, denied the motion.

After the jury returned its verdict, defendant presented a similar argument in his motion for a new trial. "The pivotal point in this case," he submitted, was that a hand "simply could not cause the wound that was discussed and described at trial." Moreover, he argued that while Saleeba testified to having been strangled to "near blackout condition" on the night of the incident, the hospital record reflected no soreness or redness or markings to her neck; nor were any bruises visible in a photograph taken by the police four days later. Thus, he maintained, reasonable minds could not differ "that nothing touched her throat that night."

### 1. Standard of Review

We have oft stated that, "[w]hen faced, as here, with both Rule 29 and [Super. R. Crim. P.] 33 motions, 'this Court first conducts a review of the new-trial motion.'" State v. Fleck, 81 A.3d 1129, 1133 (R.I. 2014) (quoting State v. Gaffney, 63 A.3d 888, 893 (R.I. 2013)). This is so because a defendant has a "higher hurdle to overcome when arguing a Rule 29 motion for judgment of acquittal than when he seeks to prevail on a Rule 33 motion for a new trial * * *." Fleck, 81 A.3d at 1133. "[U]nless a defendant can show that the presented evidence failed to support his or her conviction upon the motion-for-a-new-trial standard, a defendant necessarily will be unable to establish he or she was entitled to a judgment of acquittal." State v. Pineda, 13 A.3d 623, 640 (R.I. 2011). We begin our analysis, therefore, with an examination of defendant's motion for a new trial.

When a trial justice is presented with a motion for a new trial based on the weight of the evidence, he or she "acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." State v. Watkins, 92 A.3d 172, 191 (R.I. 2014) (quoting State v. Clay, 79 A.3d 832, 841 (R.I. 2013)). "[T]he trial justice must consider the evidence in light of the jury charge, then independently assess the credibility of the

witnesses and the weight of the evidence, and also ultimately determine whether he or she would have reached a result different from that reached by the jury." Id. (quoting Clay, 79 A.3d at 841-42). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." Id. (quoting Clay, 79 A.3d at 842). "Only when the trial justice does not agree with the jury's verdict, [must he or she] embark on a fourth analytical step." Id. (quoting Clay, 79 A.3d at 842).

This Court's review of a denial of a motion for a new trial is deferential because the trial justice is in an "especially good position to evaluate the facts and to judge the credibility of the witnesses * * *." Watkins, 92 A.3d at 191 (quoting Clay, 79 A.3d at 842). "If the trial justice has articulated adequate grounds for denying the motion, his or her decision is entitled to great weight and will not be overturned by this Court unless he or she has overlooked or misconceived material evidence or was otherwise clearly wrong." Id. (quoting Clay, 79 A.3d at 842).

### 2. Discussion

The defendant argues that the evidence presented at trial was "equivocal at best" and that the weight of the evidence did not support a finding that defendant had choked Saleeba "as she had alleged." The defendant contends that the only evidence tending to prove that he had choked Saleeba was her own testimony, which was not consistent with the statements she made to her son, mother, and hospital staff immediately after the incident. The defendant also argues that the jury could not have found him guilty beyond a reasonable doubt of assault with a dangerous weapon without expert testimony that it is possible for a person to be choked to the point of not being able to breathe without incurring any marks or bruising on the neck.

At the hearing on defendant's motion, the trial justice articulated the standard for a new trial motion and then summarized the evidence presented to the jury. The trial justice stated that she found Saleeba credible and honest, commenting that she "stated the evidence as it was, * * * didn't exaggerate, * * * [and] explained what she did, why she did it." The trial justice also commented that Cynthia's testimony was consistent with Saleeba's version regarding the precise location in the bedroom where Saleeba had sustained her injuries. The trial justice stated that she agreed with the jury's determination that defendant was guilty beyond a reasonable doubt of assault with a dangerous weapon even though the hospital had not noted any injury to Saleeba's neck. Ultimately, the trial justice agreed with the verdict.

On appeal, defendant argues that the trial justice impermissibly shifted the burden of proof to him when she commented that "there was no expert testimony with respect to * * * whether the choking with the hands would have left any marks there." We have previously rejected a similar argument when a trial justice commented about a defendant's failure to offer evidence that a visible injury would have had to result from the conduct of which he was accused. See State v. Adewumi, 966 A.2d 1217, 1224 (R.I. 2009).

Here, the trial justice thoroughly reviewed the testimony and evidence adduced at trial. She found the testimony of the state's "most significant witness," Danielle Saleeba, to be credible and forthright, specifically commenting on her testimony of defendant "choking her, standing over her, kneeling over her, his hands on her, and she couldn't breathe. She thought she was dying at that time." The trial justice then assessed the evidence in light of her charge to the jury and determined that she would have reached the same conclusion as the jury.

It is clear to us that the trial justice's statement about the lack of expert testimony to show that choking in the manner described by the complaining witness necessarily would have left

marks on her neck was merely commentary that no such evidence had been offered to discredit Saleeba's testimony.

> "[T]he trial justice's comment on the lack of expert evidence does not compel the conclusion that [the] defendant was required to produce expert evidence; rather, the comment merely implies that such evidence may have assisted the trial justice, as the trier of fact, to better understand the circumstances of the case." Adewumi, 966 A.2d at 1224.

The trial justice did consider, however, the explanation given by Saleeba at the hospital that she had hit her head on a computer table. The trial justice believed it to be a "story," noting that defendant "was at her side. She was afraid. She thought he would kill her, because he said that over and over on the way to the hospital." We are satisfied that the trial justice appropriately exercised her responsibilities in considering defendant's motion for a new trial, and that she neither overlooked nor misconceived material evidence, nor was otherwise clearly wrong.

The defendant also argues that there was no evidence that he "used his hands in a manner that was likely to produce substantial bodily harm" or that he "in fact possessed the physical capability of using his hands in such a way as to cause substantial bodily harm." He contends, therefore, that the state failed to meet its burden of proof on the charge of assault with a dangerous weapon. To the extent that this argument has been adequately preserved with respect to either his Rule 29 motion or Rule 33 motion, we find it to be unpersuasive.

We have previously held that "the use of hands alone may constitute an assault with a dangerous weapon" when the hands are "employed in such a manner as to be likely to produce substantial bodily harm." State v. Zangrilli, 440 A.2d 710, 711 (R.I. 1982). "This Court has repeatedly held that '[t]he test is not whether serious bodily injury results from the assault, but whether the object was so used that serious bodily injury may have resulted.'" State v. Lopez, 78 A.3d 773, 781 (R.I. 2013) (quoting State v. Gore, 820 A.2d 978, 980 (R.I. 2003) (mem.)). We

recently affirmed the denial of a motion for judgment of acquittal under similar circumstances. See Lopez, 78 A.3d at 781. In Lopez, the complaining witness testified that the defendant had his hands around her neck in a choking fashion but did not testify as to the length of time the defendant had his hands around her neck, nor did she sustain injuries that are typically consistent with choking. Id. at 777, 781. Based on this evidence, we upheld the denial of the motion, commenting that "[t]his Court has never stated that any specific duration or intensity is necessary for choking with a person's hands to constitute assault with a dangerous weapon." Id. at 781. An assault with a dangerous weapon occurs even though hands are not a per se weapon because serious bodily harm may result. Id.; Zangrilli, 440 A.2d at 711-12. Regardless of the injuries actually suffered by the complaining witness as a result of the choking, "a choke, if carried to its natural conclusion, would probably cause death." Lopez, 78 A.3d at 781.

In this case, the complaining witness testified that defendant "had his hands pushed on [her] throat and he was choking [her]." Saleeba recalled that she could not breathe and thought she was going to die. Notwithstanding any evidence to the contrary, whether we consider this evidence in the light most favorable to the state under Rule 29, or whether we consider it in light of the trial justice's credibility assessments under Rule 33, sufficient evidence was produced at trial to support a finding that defendant used his hands "in such a manner * * * likely to produce substantial bodily harm." See Lopez, 78 A.3d at 781 (quoting Zangrilli, 440 A.2d at 711).

## B

### Scope of Cross-Examination

### 1. Standard of Review

"The ability of a defendant to meaningfully cross-examine the state's witnesses is 'an essential element' of the due process guarantees of the United States and Rhode Island

constitutions." State v. Lomba, 37 A.3d 615, 621 (R.I. 2012) (quoting State v. Doctor, 690 A.2d 321, 327 (R.I. 1997)).  However, it is well settled that the trial justice has the discretion to sustain objections to lines of inquiry that are "potentially misleading or irrelevant, that offer little or no probative value, or that exceed the scope of the direct examination * * *." State v. Wright, 817 A.2d 600, 610 (R.I. 2003).  As such, "[a] trial justice's exercise of discretion to limit the scope of cross-examination 'is not reviewable except for clear abuse, and only if it constitutes prejudicial error.'" Lomba, 37 A.3d at 621 (quoting Wright, 817 A.2d at 610).

## 2. Discussion

The defendant argues that the trial justice erred when she did not allow him to cross-examine Saleeba about past custody issues with her two eldest sons.  The defendant contends that this subject was directly related to Saleeba's credibility as a witness because the purpose of his cross-examination on this subject was to probe her potential motive to lie about the incident. A review of the trial transcript, however, reveals that the trial justice did allow defendant to explore the custody of Saleeba's two eldest sons outside the presence of the jury.  When defendant's counsel questioned Saleeba under oath but outside the presence of the jury regarding any past custody issues and/or involvement with the Department of Children, Youth & Families (DCYF), she admitted that, while she had joint custody of both older sons with their respective fathers, primary placement of one of those sons was with his father.  Saleeba relayed that, while both of her sons were at one time physically placed with their respective fathers, her eldest son began to live with her after she contacted DCYF to report an incident between him and his step-mother.  Saleeba denied that she had ever lost custody of her eldest son.

The trial justice ruled that defendant could not cross-examine Saleeba about her prior custody issues because, based on the questioning that took place outside the presence of the jury,

the custody of her two eldest children was irrelevant to the charges being tried. Given the wide discretion we afford trial justices in limiting the extent of cross-examination, we perceive no error in the trial justice's ruling. See Wright, 817 A.2d at 610.

## C

### Illegal Sentence

The defendant argues that the fifteen-year sentence imposed by the trial justice is illegal because, he contends, the trial justice confused the evidence constituting the basis for the defendant's convictions on each count and in essence sentenced the defendant to fifteen years for his conviction for simple assault and battery. It is well settled that this Court does not consider either "the validity or the legality of a sentence on direct appeal" unless extraordinary circumstances are present. State v. Ibrahim, 862 A.2d 787, 793-94 (R.I. 2004) (quoting State v. Bettencourt, 723 A.2d 1101, 1114 (R.I. 1999)). This Court has held repeatedly that the review of a sentence must begin in the Superior Court pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. Ibrahim, 862 A.2d at 794. The record in this case does not reflect that the defendant challenged the sentence imposed by the Superior Court and the defendant has not provided us with extraordinary circumstances to compel our review of his sentence on direct appeal. Therefore, this issue is not properly before us for review.[4]

---

[4] Even if this issue were properly before this Court, there is no indication that the trial justice imposed an illegal sentence. The Reporter's Notes for Rule 35 of the Superior Court Rules of Criminal Procedure defines an "illegal sentence" as one "which has been imposed after a valid conviction but is not authorized under law." The defendant was found guilty of assault with a dangerous weapon in violation of G.L. 1956 § 11-5-2(a), which carries a maximum sentence of twenty years. The trial justice sentenced the defendant to fifteen years, which is clearly less than the maximum allowed by law.

## III

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.


**TITLE OF CASE:**  State v. Kevin Storey.

**CASE NO:**  No. 2012-327-C.A.
(P2/09-3811A)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  November 24, 2014

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Susan E. McGuirl

**ATTORNEYS ON APPEAL:**

For State:  Michael W. Field
Department of Attorney General

For Defendant:  Jeanne M. Scott, Esq.