January 29, 2019

**Supreme Court**

No. 2017-358-M.P.
(P1/15-1141A)

State                          :

  v.                           :

Jody Johnson.                  :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                     :

v.                 :

Jody Johnson.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Jody Johnson, was found guilty by a jury of first-degree robbery, conspiracy to commit first-degree robbery, and assault with a dangerous weapon in a dwelling house with intent to commit robbery.  We granted his petition for writ of certiorari requesting direct review of his convictions.[1]  He argues that the trial justice erred by denying his motion for new trial because, according to the defendant, the jury's verdict was against the weight of the evidence.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### I

### Facts and Procedural History

On April 10, 2015, defendant was charged by indictment with one count of conspiracy to commit first-degree robbery, in violation of G.L. 1956 § 11-1-6; one count of first-degree

---

[1] The defendant did not file a timely notice of appeal.

robbery, in violation of G.L. 1956 § 11-39-1(a); and one count of assault with a firearm in a dwelling house with intent to commit robbery, in violation of G.L. 1956 § 11-5-4.[2] The defendant was tried before a jury over four consecutive days in January 2017 in the Providence County Superior Court. The state presented testimony from two individuals: the complaining witness, Mary Celletti, and a Providence police detective, Matthew Cute, who responded to Celletti's home and was subsequently involved in the investigation.

Mary Celletti testified that, on the evening of January 28, 2014, she was home alone and getting ready to watch "the presidential address" when she realized, either through a knock at the door or a ring of the doorbell, that someone was outside and wanted to come in. Before opening the door, Celletti asked who was outside and heard "I'm locked out of the house" from an unfamiliar voice who also told her his mother was not at home. Celletti "opened the door a crack" and saw a boy around the age of ten or eleven standing there. She asked him if he wanted to use her phone and opened the door to allow him to enter. After he walked into her house, she tried to close the door but the door pushed back open and a "tall, muscular man" with black skin, a dark blue jacket, a hood, a scarf, and glasses appeared in the doorway and asked her what she was doing with his son. As she answered that she thought the boy was locked out of his house and she was allowing him to use her phone, the man pulled out a gun with a "dirty silver barrel" and brown handle and pointed it at her face. Celletti observed that the man's glasses were dark gray with Scotch tape on one side holding the arm to the front frame of the lenses. The man

---

[2] The defendant was also charged with contributing to the delinquency of a minor, in violation of G.L. 1956 § 11-9-4, but the state dismissed this charge pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure after trial when it realized—during the sentencing phase of the case—that, pursuant to § 11-9-9, the Family Court has exclusive jurisdiction over charges brought under § 11-9-4.

instructed Celletti to go sit down, and she sat down on her bed, located in an open alcove adjacent to the kitchen.

Celletti testified that the man asked her who else lived in her home; when she replied that her son lived there but was at his girlfriend's house that evening, the man asked where the son's bedroom was located and said that he was there to collect money the son owed him. The man then took off his scarf and his jacket, hung the jacket on the back of a kitchen chair, and pulled down the hood of his sweatshirt, uncovering his head. He made a phone call and Celletti heard a third person enter her house from the same door through which the boy and the man had come. The man handed the gun to the boy and instructed him to sit in a chair across from Celletti. The boy held the gun on her while the man disappeared from view and spoke with the third person who had entered her home. Celletti testified that she never saw the third person's face, but that she concluded this person was female from the timbre of the voice. Celletti described the third person as tall and thin, wearing a red hoodie, with the hood up for the entire duration of the incident.

Celletti testified that she engaged the boy in conversation and told him about herself "to humanize [her]self with [him]" and to try to find out who he was. She learned his name and the name of his school. When the boy wanted a drink, Celletti gave him a can of Diet Coke. She asked him if he had ever held a gun before and if he thought they were going to kill her.

Celletti testified that she saw her son's mattress and boxspring being lifted up as well as things in her bedroom torn up; she also heard her computer being moved, her pocketbook being dumped out, her television being turned off, unplugged, and carried out, as well as the movement of other televisions in her home. Celletti also stated that the people who entered her home left with bags from her basement, her cell phone, her home phone, bottles of red wine, coin

collections, CDs and DVDs, her son's wedding band, and cash, among other things. Before the group of intruders left, the man took the gun from the boy, used a bra from Celletti's dirty clothes hamper to wipe the gun off, and, on his way out the door, said: "If you call the cops, I'm coming back."

A few moments later, Celletti saw the man's jacket on the back of her kitchen chair, called out to him, and gave the jacket to him. After realizing that both her cell phone and her home phone had been taken, she found an old cell phone with just enough battery charge to make a call to her daughter and screamed that she had just been "robbed at gunpoint." Her daughter soon arrived at the house, which shortly thereafter was "swamped with police from Johnston and Providence."

Both Celletti and Det. Cute testified that, a few days after the incident, the detective brought a yearbook from the boy's school over to Celletti's house and Celletti was able to identify the boy who had been in her house the night of the incident. Both witnesses also testified that, two weeks after the incident, Det. Cute brought over a photo array which included defendant's photo, but Celletti was unable to identify any of the men in the photographs as the man who had entered her home on January 28.

Some months after being shown the photo array, Celletti called the Attorney General's office to inquire about the legal proceedings involving the boy. After a brief conversation—the substance of which is not on the record—she used her daughter's laptop computer to search Facebook for the name "Jodi Johnson." Celletti thought this might have been the name of the third person in her house on January 28 whom she had not seen but had assumed was a woman based on the voice. After scrolling through the various Jodi Johnsons who came up in the Facebook search results, she looked at photos for different spellings of "Jodi." She testified that,

"all of a sudden [she] saw a picture that was very familiar to [her], but it wasn't a female, it was a male." Celletti testified that, based on the eyes and the large head, "he looked like the man who came into [her] house with a gun." Celletti clicked on the photo, which brought her to that man's Facebook profile page. Celletti scrolled through several photos of this "Jody Johnson," including one in which he was wearing glasses with tape on the corner. When Celletti saw that picture, she was "a hundred percent" certain this photo was of the man who had entered her house on January 28. Celletti called Det. Cute, who testified that he went to her house, watched her repeat the search sequence she had performed on Facebook, and, using his own cell phone camera, took photos of the images on her computer screen. Celletti identified defendant as the man who entered her home and pointed a gun at her face.

At the close of the state's evidence, defendant moved for a judgment of acquittal on the assault charge, arguing that insufficient evidence had been produced that a firearm was used during the incident. The trial justice denied the motion. The defendant renewed his motion prior to the delivery of the jury instructions and closing arguments; the trial justice reserved his decision. The jury returned guilty verdicts on all counts. In March 2017, the trial justice denied defendant's renewed motion for judgment of acquittal and motion for new trial, in which defendant argued that the jury's verdict was contrary to the weight of the evidence and Celletti's testimony.

The trial justice imposed a sentence of twenty-five years' imprisonment with twelve years to serve and the balance suspended, with probation, on defendant's first-degree robbery conviction and on defendant's assault-with-a-firearm conviction. With respect to defendant's conspiracy conviction, the trial justice initially sentenced him to twenty years' imprisonment with ten years to serve and ten years suspended, with probation, but corrected the sentence *sua*

*sponte* a month later because this sentence exceeded the statutory maximum. Accordingly, he modified the sentence to ten years' imprisonment with ten years to serve. Each sentence runs concurrently with the sentences for the other convictions. Final judgment entered on May 30, 2017. The defendant filed a notice of appeal before the trial justice entered a final judgment of conviction, but did not file another notice of appeal after the trial justice corrected the sentence imposed for the conspiracy conviction. We granted defendant's petition for writ of certiorari asking this Court for direct review of his convictions.

## II

### Standard of Review

The defendant appeals only from the trial justice's denial of his motion for new trial. As we have oft repeated, "[w]hen a trial justice is presented with a motion for a new trial based on the weight of the evidence, he or she acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Gomez*, 116 A.3d 216, 223 (R.I. 2015) (quoting *State v. Storey*, 102 A.3d 641, 646 (R.I. 2014)). "[T]he trial justice must consider the evidence in light of the jury charge, then independently assess the credibility of the witnesses and the weight of the evidence, and also ultimately determine whether he or she would have reached a result different from that reached by the jury." *Id.* (quoting *Storey*, 102 A.3d at 646). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Id.* (quoting *Storey*, 102 A.3d at 646). "Only when the trial justice does not agree with the jury's verdict, [must he or she] embark on a fourth analytical step." *Id.* (quoting *Storey*, 102 A.3d at 646).

"This Court's review of a denial of a motion for a new trial is deferential because the trial justice is in an especially good position to evaluate the facts and to judge the credibility of the witnesses * * *." *Gomez*, 116 A.3d at 223 (quoting *Storey*, 102 A.3d at 647). "If the trial justice has articulated adequate grounds for denying the motion, his or her decision is entitled to great weight and will not be overturned by this Court unless he or she has overlooked or misconceived material evidence or was otherwise clearly wrong." *Id.* (quoting *Storey*, 102 A.3d at 647).

## III

### Discussion

On appeal, defendant argues that the trial justice was clearly wrong when he denied defendant's motion for a new trial because, according to defendant, the verdict was against the weight of the evidence. Specifically, he asserts that Celletti's testimony identifying him as the perpetrator should have been given little weight and that the weight of the evidence does not indicate that an operable firearm was used during the incident. We begin our discussion by acknowledging that the trial justice applied the correct standard for assessing the motion for new trial and articulated sufficient grounds for denying the motion; his decision is therefore entitled to great weight and deference pursuant to our well established standard of review. *See Gomez*, 116 A.3d at 223.

With respect to Celletti's in-court identification of defendant as the perpetrator, defendant argues that little weight should have been given to this testimony because she had not been able to identify him from a photo array a couple of weeks after the incident despite her testimony that she had spent several minutes looking at his face while he was in her house. The defendant also argues that none of the Facebook photos of him wearing glasses shows tape at the corner, which directly contradicts the emphasis he claims Celletti placed on her ability to identify him on

Facebook as the perpetrator based on the Scotch tape at the corner of his glasses. In addition, defendant argues that Celletti more likely identified defendant as the perpetrator because a representative from the Attorney General's office told her the name of a suspect, she went looking for a photo of the person with that name, and then adjusted her recollection of his physical description once she found the photos.

In the trial justice's decision denying defendant's motion for new trial, he concluded that Celletti's testimony was consistent and that the few discrepancies—drawn out during cross-examination—between her initial statements to the police, her grand jury testimony, and her trial testimony "did not diminish the weight or significance of [her] testimony." Our review of the testimony reveals that, as Celletti scrolled through the Facebook profiles listed from her search for "Jodi Johnson," she came across a photo of a face that was "very familiar" to her "[b]ecause he looked like the man who came into [her] house with a gun." She opened his profile and looked through other photos; when she saw the photo of him wearing glasses with "the shadow of the tape on the side of the glasses," she "knew a hundred percent that was him." While it had apparently been suggested to Celletti that an individual by the name of "Jodi Johnson" was thought to be involved in the incident, the name merely provided a starting point for Celletti's Facebook search. Indeed, she testified that, when she started her search, she was looking for a female.

As the state points out, the Facebook search for "Jodi Johnson" yielded many profiles and photos that Celletti scrolled through before seeing one with a familiar face; the search did not result in a single photo that Celletti concluded was a photo of her perpetrator. Moreover, at trial, Celletti emphasized that her in-court identification of defendant was based on "his height, how big he is, his eyes." Deferring to the trial justice's front-and-center position to evaluate the facts

and to judge credibility, considering his clear articulation of his conclusion that Celletti's testimony was consistent and credible, and absent any indication that he overlooked or misconceived the evidence, we agree with the trial justice's assessment of the weight to which Celletti's testimony was entitled and perceive no error on his part. *See Gomez*, 116 A.3d at 223.

The defendant also specifically challenges his convictions for first-degree robbery and assault with a dangerous weapon in a dwelling house with intent to rob on the basis that the guilty verdicts for these counts are against the weight of the evidence that the gun wielded during the incident was operable. He argues that Celletti's only testimony about the gun was to describe its color and to state that it was pointed at her, and he further argues there was no testimony that she knew the gun was operable or that the intruders indicated the gun was operable. The defendant contends that Celletti's testimony about her fear at the sight of the gun does not show its operability.

The indictment in this case identified the dangerous weapon as a firearm. To prove assault with a dangerous weapon when the dangerous weapon in play is a firearm, it is well settled that the state must prove the defendant possessed an operable gun. *State v. Tillery*, 922 A.2d 102, 107 (R.I. 2007). The state need not either produce the gun at trial or prove that the gun was loaded during the commission of the crime; the operability of the gun "may be inferred from the actions and statements of the defendant." *Id.* at 108. We have had prior opportunities to consider whether the circumstances presented in a variety of cases could lead to a reasonable inference that an operable firearm was used in the commission of an assault. We have held that there was sufficient evidence that an operable gun was used when witnesses consistently described the gun they saw the defendant carrying and testified that the defendant had made a threat to shoot and that they had heard the gun click. *Id.* We have also held that the jury could

properly infer a firearm was used when the witnesses testified that they were afraid, when the defendant pointed a gun at—and within inches of—one witness's chest, and when the defendant threatened to shoot a hole in a nearby mattress. *State v. Andrade*, 657 A.2d 538, 543 (R.I. 1995) *abrogated on other grounds by State v. Jackson*, 752 A.2d 5, 9-10 (R.I. 2000). On the other hand, we have also vacated a conviction after holding that there was insufficient evidence to prove that the defendant possessed an operable weapon when the complaining witness was equivocal about whether the defendant had possessed a gun at all during the incident in question. *State v. Caba*, 887 A.2d 370, 376-77 (R.I. 2005).

The case at bar presents testimony that is more akin to the circumstances in *Tillery* and *Andrade* than those in *Caba*. In her testimony at trial, Celletti described the gun as having a dirty silver barrel and brown handle and stated that defendant had pointed the gun at her face when he entered her home. She was clearly afraid the gun would be used to kill her because she asked the boy—who held the gun on her while the others searched her house—whether he thought the others were going to kill her. She also testified that the gun was pointed at her face by the young boy while defendant and the third person removed a variety of electronics and personal items from her home. As the intruders were leaving, Celletti testified that defendant issued a threat: "If you call the cops, I'm coming back."

In his decision denying defendant's motion for new trial, the trial justice specifically concluded that a gun was used during the incident. He considered the caselaw discussed *supra* and gave great weight to Celletti's testimony that she was in fear, as demonstrated by her question to the young boy about whether he thought the others were going to kill her, defendant's threat to return if she called the police, and the gun pointed at her for the duration of the incident. Unlike the defendant in *Caba*, Celletti was unequivocal about the presence of the

- 10 -

gun. The unrebutted testimony as to the actions and statements of defendant and his accomplices lead to a reasonable inference that the gun was operable, and defendant has not shown that the trial justice overlooked or misconceived any evidence by so concluding.

Overall, the trial justice concluded that Celletti was a credible witness, and he specifically stated that he agreed with the jury's guilty verdicts on all three counts. After thoroughly reviewing the record, it is apparent that the trial justice explained and supported his reasons for denying the defendant's motion for new trial. It is our opinion that the trial justice did not overlook or misconceive any material evidence and did not err by denying the defendant's motion.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of conviction. The record in this case may be returned to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jody Johnson. |
| **Case Number** | No. 2017-358-M.P.<br>(P1/15/1141A) |
| **Date Opinion Filed** | January 29, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Joseph A. Montalbano |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of the Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |