December 2, 2021

**Supreme Court**

No. 2019-398-C.A.
(P3/17-1605ADV)

State                    :

v.                    :

Malik Garcia.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                    :

v.                       :

Malik Garcia.            :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Malik Garcia, appeals from a judgment of conviction following a bench trial in Superior Court for simple domestic assault or battery, in violation of G.L. 1956 §§ 11-5-3 and 12-29-2(a)(1); and domestic refusal to relinquish or to damage or to obstruct telephone, in violation of G.L. 1956 §§ 11-35-14(a) and 12-29-2(a)(12).[1]  On appeal, the defendant asserts that the trial justice erroneously prevented and restricted the defendant's cross-examination of the complaining witness, in violation of the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal

---

[1] The documents in the record, including the criminal complaint, refer to defendant as "Malik"; however, the parties have indicated that defendant's first name is actually "Maik."  In this opinion, we use "Malik"—the spelling used by defendant in his submissions to this Court.

should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The defendant was charged by criminal complaint in Sixth Division District Court with one count of domestic simple assault and one count of refusal to relinquish a telephone resulting from a domestic incident that took place on October 10, 2016.  At a jury-waived trial in the Superior Court following transfer from the District Court, the complaining witness, Lucely Garcia Vargas, testified that she and defendant were in a "sentimental" relationship and had lived together in Providence, along with Lucely's daughter, Tatiana Garcia, and a roommate for approximately one year when the alleged incident took place.[2]

According to Lucely, on October 10, 2016, she "asked [defendant] for permission" to "leave the house and go visit a friend" who lived in Pawtucket, Rhode Island.  Lucely testified that she had "permission to be out until three in the afternoon" but she did not arrive home until 5 or 5:30 p.m. because it was a holiday

---

[2] We refer to parties with the surname "Garcia" by their first names for purposes of clarity.  No disrespect is intended.

and the buses were late. Lucely testified that defendant was upset with the timing of her return home and, additionally, he was upset with the fact that Lucely "smelled like [cigarette] smoke" from a coat that her friend had given her. Lucely further testified that, when she offered to call her friend to verify her whereabouts, defendant pulled her to him, struck her, and pushed her onto the bed. According to Lucely, defendant then grabbed her by the hair and she "fell to the ground and went between his legs so that [she] could escape." Lucely testified that she attempted to grab her keys, identification card, and cell phone, but was able to take only her keys.

Lucely tesified that, upon securing her keys, she ran out of the apartment. Subsequently, Lucely spotted a police cruiser and tried to communicate with a police officer, who was later identified at trial as Patrolman Matthew Goddard. Lucely testified that her efforts were unsuccessful because, at the time, she spoke very little English, and Officer Goddard spoke only English. Shortly thereafter, a second police officer, Patrolman John Benros, arrived at the scene, and Lucely was able to speak with him. Lucely explained that she did not initially tell the officers about the events that had just taken place with defendant because she knew that defendant did not possess "any documents" and could face "legal problems." Ultimately, however, Lucely told the officers what had occurred.

Both officers also testified at trial, stating that they each observed a "red mark" on the left side of Lucely's face. Lucely testified that the officers did not take any

pictures of her and that she was not taken to the hospital because her "injuries" were not "severe[.]" She further testified that she was driven back to defendant's apartment in a police cruiser. The officers arrested defendant and retrieved Lucely's cell phone.

At trial, defendant presented a different version of events. The defendant testified that, on the date of the incident, he had finished his work shift at 8 a.m. and returned to the apartment. The defendant contended that, after he arrived home, Lucely informed him that "she was going to go out with a female friend[.]" The defendant testified that he called Lucely between 1 and 1:30 p.m. to tell her that he had finished a work job and he "ask[ed] if she would like [him] to or if she was ready for [him] to come and pick her up at her friend's house[,]" to which Lucely responded, according to defendant, that "she wasn't finished doing what she was doing." The defendant testified that, from the period of 1:30 p.m. until approximately 5:30 p.m., he was asleep in the room he shared with Lucely with his cell phone turned off.

The defendant testified that, around 5:30 p.m., Lucely arrived home "hysterical" and woke him up. According to defendant, Lucely was angry with him for having his cell phone turned off and for not picking her up from her friend's house. The defendant testified that, when he told Lucely to leave the room because he wanted to continue resting before he had to leave for work, she became

"aggressive and tried to hit [him] in the face" with her right hand. The defendant recalled that Lucely did not make physical contact with him because he moved "backwards" and he "pushed her." The defendant testified that, after telling Lucely that both she and her daughter were to leave the apartment and that defendant could no longer "support" them, Lucely responded, according to defendant, "Now you'll pay, and you'll find out who I am, who we Colombians are."

The defendant testified that, at some point after Lucely and defendant's interaction, police officers entered his apartment with a key. The defendant testified that the police officers informed him that an incident had occurred and asked if defendant had struck Lucely, which defendant denied. The police officers then arrested defendant.

Relevant to the issue raised by defendant on appeal, the trial justice sustained approximately fourteen objections to defense counsel's questions to Lucely on cross-examination and six objections to defense counsel's direct examination of defendant. After the trial, the trial justice found defendant guilty on both charges. For count one, the simple domestic assault charge, defendant was sentenced to one year of incarceration, suspended, with probation, as well as domestic abuse counseling; and for count two, the refusal to relinquish telephone charge, defendant was sentenced to a consecutive ninety-day suspended term of incarceration, with probation. The trial justice further required that a no-contact order be entered.

The defendant filed a premature notice of appeal on November 19, 2018. The judgment of conviction was ultimately entered on November 27, 2018, placing defendant's appeal properly before us. *See Butler v. Gavek*, 245 A.3d 750, 753 n.1 (R.I. 2021) (noting that a notice of appeal filed prematurely will be treated "as if it had been timely filed after judgment was entered" (quoting *Sullivan v. Coventry Municipal Employees' Retirement Plan*, 203 A.3d 483, 486 n.4 (R.I. 2019))).

## II

### Standard of Review

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, "affords a criminal defendant the right to confront witnesses offered against him or her." *State v. Scholl*, 661 A.2d 55, 58 (R.I. 1995). "The ability of a defendant to meaningfully cross-examine the state's witnesses is an essential element of the due process guarantees of the United States and Rhode Island constitutions." *State v. Storey*, 102 A.3d 641, 648-49 (R.I. 2014) (quoting *State v. Lomba*, 37 A.3d 615, 621 (R.I. 2012)).

"To satisfy the constitutional right of cross-examination, 'the trial justice is required to afford the accused reasonable latitude to establish or reveal bias, prejudice, or ulterior motives as they may relate to the case being tried.'" *State v. Clark*, 974 A.2d 558, 575 (R.I. 2009) (quoting *State v. Bustamante*, 756 A.2d 758, 765 (R.I. 2000)). "[T]he trial justice has the discretion to sustain objections to lines

of inquiry that are 'potentially misleading or irrelevant, that offer little or no probative value, or that exceed the scope of direct examination[.]'" *Storey*, 102 A.3d at 649 (quoting *State v. Wright*, 817 A.2d 600, 610 (R.I. 2003)). "[O]nce sufficient cross-examination has been permitted to satisfy the constitutional safeguards, the trial justice is vested with discretion to limit the scope of additional cross-examination and that decision will not be disturbed by this Court absent an abuse of discretion." *Clark*, 974 A.2d at 575.

### III

### Discussion

On appeal, defendant argues that the trial justice committed reversible error by impermissibly restricting defendant's cross-examination of Lucely at trial. As noted *supra*, the trial justice sustained approximately fourteen objections to defense counsel's questions—the majority of which defendant argues were indispensable to the determination of the complaining witness's credibility and bias. Moreover, defendant highlights that the trial justice further sustained five objections to defense counsel's direct examination of defendant.[3] In particular, defendant highlights three instances of the trial justice's purported improper restriction of cross-examination: (1) sustaining an objection to defense counsel's attempt to cross-examine Lucely

---

[3] Although inconsequential to the issue before the Court and to defendant's argument on appeal, our review of the record reveals that six such objections were sustained.

- 7 -

with respect to certain lawsuits that she had previously filed; (2) sustaining an objection to defense counsel's attempt to elicit evidence regarding Lucely's claims that defendant had assaulted her five or six times in the past; and (3) sustaining an objection to defense counsel's question to Lucely about her daughter Tatiana's refusal to corroborate Lucely's version of events.

The defendant argues that most of the cross-examination questions that led to sustained objections were necessary to undermine Lucely's credibility and to establish her bias; however, he offers specific arguments for only three of the instances. Although defendant indicated that further argument would be made regarding the other instances of restriction of cross-examination, defendant ultimately failed to fully develop those additional arguments on appeal. Therefore, we confine our analysis to the instances that defendant has sufficiently briefed. *See Sousa v. Roy*, 243 A.3d 775, 782 n.2 (R.I. 2021) (noting that, because the plaintiffs "present[ed] no argument beyond merely stating that" the trial justice's action of limiting their examination was "in error[,]" they waived the issue for review); *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n.1 (R.I. 2002) (highlighting that "[s]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue").

The defendant first argues that the trial justice impermissibly restricted cross-examination with respect to lawsuits he claimed Lucely had filed in Colombia. Through evidence of these lawsuits, defendant avers, he was attempting to demonstrate a pattern of fraudulent accusations made by Lucely. The three Colombian lawsuits pertained to the following: (1) a lawsuit Lucely filed on behalf of two minor children, which was ultimately dismissed because Lucely lacked proper standing; (2) a complaint she brought against a Colombian telephone operator disputing a bill because, defense counsel argued, she had contended that certain "documents of hers had been falsified to take out a prepaid phone"; and (3) a lawsuit against Tatiana's father seeking child support.

This Court has previously held that it was "error for a trial justice to preclude a defendant from asking the state's primary witness about his or her potential bias toward the accused or potential motive to fabricate testimony." *Clark*, 974 A.2d at 577. In *State v. Tiernan*, 941 A.2d 129 (R.I. 2008), we noted that motive to fabricate or bias is "always relevant as discrediting the witness and affecting the weight of [the witness's] testimony[,]" *Tiernan*, 941 A.2d at 134 (quoting 3A John H. Wigmore, *Evidence in Trials at Common Law* § 940 at 775 (Chadbourn rev. 1970)), and in that case, we held that the trial justice erred when, on cross-examination, he did not allow the defendant to explore the complaining witness's potential bias stemming from his "intended civil suit against [the] defendant." *Id.* at 135. There,

we highlighted that "it would plainly be in [the complaining witness's] interest to perpetuate a version of the facts that maximized his own injuries and the fault of [the] defendant." *Id.*

Our review of the trial transcript in the present case reveals that Lucely's purported actions in previously filing three entirely unrelated lawsuits in Colombia does not establish a potential for bias toward defendant or a motive to fabricate. The defendant failed to establish the relevance of such lawsuits. Furthermore, defendant did not demonstrate how any of the three lawsuits were fraudulent or false; he offered no proof that plaintiff lied or fabricated anything in the Colombian lawsuits. Moreover, the trial transcript demonstrates that the trial justice was willing to allow defendant to pursue this line of questioning if defendant could provide "backup" documentation of the lawsuits. The defendant was unable to do so. The documents that defendant sought to use were uncertified and in Spanish, which the prosecutor was unable to read.

Accordingly, the trial justice did give defendant "reasonable latitude" to establish Lucely's possible bias against defendant or her ulterior motives, and it was within the trial justice's discretion to properly limit cross-examination. *See State v. Brown*, 709 A.2d 465, 482 (R.I. 1998) ("Questions concerning the relevancy of evidence are left to the sound discretion of the trial justice, * * * who must 'foster a search for the truth by giving reasonable latitude to the purpose of cross-examination

while preserving a fair and orderly trial.'" (quoting *State v. Kholi*, 672 A.2d 429, 437 (R.I. 1996))). The trial justice, therefore, "cautiously exercise[d]" her discretion in sustaining objections on questions relating to these lawsuits. *See Clark*, 974 A.2d at 564.

The defendant next asserts that the trial justice erred in restricting testimony on the alleged prior assaults and threats made against both Lucely and her daughter Tatiana by defendant. Although the trial justice did not permit defendant to question Lucely about the facts of the first alleged assault or the amount of times defendant had threatened to kill her, the trial transcript reveals that defendant was allowed some cross-examination of Lucely on her allegations of prior instances of assault. Also, the trial justice overruled the state's relevance objection to defendant's question, "Can you tell the [c]ourt, what period of time was it that those five or six physical assaults took place with him?" We are thus satisfied that the trial justice did not abuse her discretion in limiting the scope of defendant's cross-examination on the alleged prior assaults.

Regarding defendant's final claim of error—the trial justice's refusal to permit defendant to question Lucely about whether she had asked Tatiana to make a statement to corroborate her version of events—we similarly view the trial justice's ruling as sound. The defendant contends that this question pertained not only to the assault at issue in this case but also to the prior allegations of assault, with defendant

attempting to draw an inference that Tatiana refused to provide a statement because the prior assaults in fact had never occurred. This suggested inference is mere speculation, and one that does not necessarily flow from Tatiana's decision not to make a statement. Neither defendant nor Lucely supplied the trial justice with any concrete rationale as to why Tatiana may have declined to provide a statement in either the instances of the prior alleged assaults or the alleged assault at issue in this case. Importantly, Tatiana was not even present when this most recent alleged incident occurred—a fact to which both Lucely and defendant testified at trial.

We have stressed that "[t]he scope of cross-examination is not unlimited and the questioning is subject to the sound discretion of the trial justice." *Wright*, 817 A.2d at 610. "Inquiries that are potentially misleading or irrelevant, that offer little or no probative value, or that exceed the scope of the direct examination are objectionable." *Id.* This Court is of the opinion that Tatiana's refusal to make a statement is not probative of Lucely's credibility. Accordingly, the trial justice did not abuse her considerable discretion in sustaining the prosecutor's objection.

In sum, due to the wide discretion we afford trial justices in limiting the extent of cross-examination, we identify no error in the trial justice's rulings in this case.

**IV**

**Conclusion**

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Malik Garcia. |
| **Case Number** | No. 2019-398-C.A. (P3/17-1605ADV) |
| **Date Opinion Filed** | December 2, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For State: <br><br> Virginia M. McGinn <br> Department of Attorney General <br> For Defendant: <br><br> Robert F. Weber, Esq. |